EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MANUEL TORRES, acusado y apelante.

Núm. 7840.—*Sometido:* Diciembre 7, 1939. *Resuelto:* Abril 29, 1940.

*Dubón & Ochoteco* y *Angel D. Marchand Paz,* abogados del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Este es un caso de desacato en el cual el apelante fué condenado a treinta días de cárcel. El primer documento que figura en la transcripción es una orden que dice:

"En la Corte de Distrito del Distrito Judicial de San Juan, Puerto Rico.—Sala de lo Criminal.—El Pueblo de Puerto Rico v. Manuel Torres, Acusado.—Criminal Núm. 14372.—Desacato.—Orden. —POR CUANTO, en el día de hoy se estaba ventilando ante esta Corte un proceso por asesinato contra Santiago Ramos, estando el Jurado debidamente constituído y en el salón destinado al efecto en los altos de este edificio;—POR CUANTO, el Juez que provee fué asaltado por el acusado poco después de haber sido suspendida la sesión de la Corte, en momentos que el Juez salía de su despacho, y precisamente en el pasillo contiguo a la sala del Tribunal;—POR CUANTO, esta conducta del acusado no solamente tendió a interrumpir los procedimientos de esta Corte e indiscutiblemente a sembrar también el terror en el Jurado que estaba constituído y en el de cualquier otro funcionario del Tribunal, entendiendo la corte que dicha conducta por parte del acusado constituye un desacato porque menoscaba el prestigio de las cortes de justicia:—POR TANTO, la Corte ordena que el acusado en este caso comparezca el día 3 de

febrero de 1939, o sea pasado mañana, a las nueve A. M., para que exponga las razones por las cuales no deba ser castigado por desacato; y que copia de esta orden se entregue a los abogados del acusado.— San Juan, Puerto Rico, febrero 1, 1939. (fdo.) M. Romany, Juez. Notificados los abogados Dubón y Ochoteco. Feb. 1, 1939. (fdo.) Eduardo López Tizol, Secretario.''

Siguen el acta del juicio y la sentencia, a saber:

''El Pueblo de Puerto Rico v. Manuel Torres.—(Causa Núm. 14372.)—Desacato.—En Corte, presidida por el Hon. Juez Marcelino Romany, actuando de fiscal el Sr. Hernán R. Franco y de taquígrafo el Sr. Carmelo Pérez, fué llamado este caso para que el acusado respondiera o dijera las razones por las cuales no deba ser castigado por desacato y compareció el acusado en persona y asistido de sus abogados Sres. Luis Dubón y Félix Ochoteco. Preguntádole por la Corte qué alegación hacía el acusado manifestó, por conducto de sus abogados que negaba los hechos y reproducía las alegaciones que había hecho en Corte el día 1 de febrero y la Corte dictó la siguiente sentencia:—Por cuanto, el día primero de febrero, 1939, mientras se estaba ventilando ante esta Corte un proceso de asesinato contra Santiago Ramos, estando el Jurado debidamente constituído y en el salón destinado al efecto en los altos del edificio que ocupa la Corte de Distrito de San Juan, Puerto Rico;—Por cuanto, el Juez que provee fué asaltado en dicho día primero de febrero, 1939. por el acusado poco después de haber sido suspendida la sesión de la Corte, en momentos que el Juez que suscribe salía de su despacho, y precisamente en el pasillo contiguo a la sala del tribunal; Por cuanto esta conducta del acusado no solamente tendió a interrumpir los procedimientos de esta Corte e indiscutiblemente a sembrar. también el terror en el Jurado que estaba constituído y al de cualquier otro funcionario del tribunal, entendiendo la Corte que dicha conducta por parte del acusado constituye un desacato porque menoscaba el prestigio de las cortes de justicia;—Por cuanto, la Corte ordenó que el acusado Manuel Torres compareciera ante este tribunal el día 3 de febrero, 1939, a las 9:00 A. M., para que expusiera las razones por las cuales no debiera ser castigado por desacato, y ordenó, además, que copia de la orden anterior, dictada en febrero 1, 1939, se entregara a los abogados del acusado, señores Dubón & Ochoteco;—Por cuanto, hoy 3 de febrero, 1939, compareció el acusado, por conducto de sus expresados abogados, y manifestó que negaba los hechos alegados en la orden para mostrar

causa, a pesar de que el día primero de febrero, 1939, cuando se hizo lectura de la orden manifestó que aceptaba todos los hechos expuestos en la orden;—Por cuanto, además de dicha aceptación por parte de uno de los abogados del acusado, de los hechos alegados en la orden para mostrar causa, la Corte entiende que no es necesario practicar prueba en un procedimiento de desacato en el cual el Juez es la persona agredida, puesto que el Juez no puede pasar por sobre ninguna prueba puesto que ya tiene conocimiento personal de los hechos, y no podría resolver jamás que no fué cierta una agresión cuando al Juez personalmente le constaba tal hecho, siendo, por tanto, completamente inútil la presentación de prueba: —Por tanto, esta Corte, no habiéndose presentado ninguna razón legal, a juicio del tribunal, por la cual no deba el acusado ser castigado por desacato, la Corte lo declara culpable de un desacato a este tribunal, y le impone treinta días de cárcel a Manuel Torres, que deberá cumplir en la Cárcel de Distrito de San Juan, Puerto Rico, y condena, así mismo, al acusado, Manuel Torres, a pagar una multa de $200.00.—San Juan, Puerto Rico, febrero 3, 1939. (fdo.) M. Romany, Juez. Certifico: (fdo.) Eduardo López Tizol, por M. Aldea Bigles, Subsecretario.''

Apeló Manuel Torres para ante este tribunal en febrero 3, 1939, y cuatro días después presentó a la corte sentenciadora la siguiente moción:

''En la Corte de Distrito del Distrito Judicial de San Juan, P. R.—El Pueblo de Puerto Rico v. Santiago Ramos, Acusado.—Criminal Núm.— Sobre: Asesinato.—(Incidente sobre Desacato contra Manuel Torres.)—Moción para que se incluyan determinados extremos en el legajo de sentencia.—Al Honorable Tribunal:—Comparece el acusado Manuel Torres, por conducto de sus abogados que suscriben, y ante la Hon. Corte respetuosamente expone:—1.—Que en el caso de epígrafe el acusado compareció el día 3 del mes en curso, en corte abierta, y a virtud de una orden de arresto que se librara en su contra, para responder de un delito de desacato, habiendo alegado, a través de sus abogados que suscriben, todo cuanto estimó pertinente en su defensa, habiendo transferido este Hon. Tribunal, y a petición del compareciente, para el día 5 de los corrientes, la continuación de la vista de dicho proceso por desacato, fecha en que volvió a comparecer el acusado asistido de sus abogados y volvió a formular las objeciones que juzgó pertinentes conforme a derecho.—2.—Que en el presente incidente de desacato no

procede elevación de Transcripción de Evidencia alguna para ante el Hon. Tribunal Supremo, y en relación con el recurso de apelación que tiene establecido el acusado contra el fallo recaído, ya que no hubo práctica de evidencia por parte de El Pueblo, ni por parte del acusado.—3.—Que habiendo el acusado hecho sus alegaciones en corte abierta y oralmente, procede se incluyan todas las actuaciones habidas en récord en cuanto a las dos vistas celebradas ante este Hon. Tribunal en relación con dicho procedimiento de desacato, en el Legajo de Sentencia.—En mérito de lo anteriormente expuesto, el acusado de este Hon. Tribunal respetuosamente solicita se sirva ordenarle al Sr. Secretario que al preparar el Legajo de Sentencia a los fines de dicho recurso de apelación, incluya en el mismo transcripción taquigráfica de las actuaciones habidas en dichas dos vistas, debidamente certificadas por el taquígrafo que actuara en corte abierta en relación con las mismas, y al efecto también solicita el acusado que por este Hon. Tribunal se le ordene a dicho taquígrafo prepare y certifique la citada transcripción taquigráfica, la que deberá ser aprobada por esta Hon. Corte.—San Juan, P. R., a 7 de febrero de 1939. J. Ramírez Santibáñez, Dubón & Ochoteco, Por: (fdo.) Félix Ochoteco, Jr., Abogados del acusado.''

Dictada la orden solicitada, como transcurriera el tiempo y la transcripción no se archivara, el secretario de la corte en mayo 11, 1939, se lo comunicó a los abogados. Nada aparece que hicieran, y dicho funcionario, en junio 16, 1939, certificó y remitió a esta Corte Suprema el récord de la apelación sin contenerla.

En esta corte el apelante presentó cuatro mociones de prórroga para radicar su alegato, archivándolo finalmente en septiembre 25, 1939, sometiendo el suyo el fiscal en diciembre 6, 1939, y celebrándose la vista del recurso, con asistencia e informe de los abogados de las partes, en diciembre 7, 1939.

En su alegato el acusado apelante sostiene que la corte sentenciadora erró al condenarlo por un delito de desacato ''no cometido en la inmediata presencia del tribunal sin haber practicado prueba alguna'' y al condenarlo ''no obstante existir absoluta ausencia de prueba.''

Discute ampliamente el señalamiento de error y resume su discusión como sigue:

"1.—Que no negamos, y por el contrario, admitimos, que toda agresión o conducta incorrecta o provocativa contra un Magistrado, mientras se halla en el edificio del tribunal, constituye un desacato indirecto o constructivo, pero no en la inmediata presencia del Tribunal.

"2.—Que para que una agresión o conducta reprochable contra un Magistrado, pueda constituir desacato directo, tiene que cometerse en la presencia inmediata del Tribunal, o lo que es lo mismo, mientras el Tribunal se halla celebrando sesión.

"3. Que todo desacato cometido como consecuencia de la agresión a un Magistrado o de conducta ofensiva hacia el mismo, cometido en la inmediata presencia del Tribunal, esto es, mientras se halla celebrando sesión, puede ser castigado sumariamente, y sin práctica alguna de evidencia, en relación con los hechos que han dado motivo al proceso, y que se consignan en el '*commitment*'.

"4.—Que toda agresión o conducta irrespetuosa hacia un Magistrado, no en la inmediata presencia del Tribunal, y mientras éste no se halle celebrando sesión, aunque constituye desacato, no puede ser condenado el acusado, sin la práctica de la correspondiente evidencia evacuada, conforme lo determina la legislación vigente en nuestra jurisdicción, en relación con la admisión o no admisión de prueba. 12 Am. Jurisprudence, página 441, Sección 74.

"5.—Y por último, que no habiéndose cometido en la inmediata presencia del Tribunal, y mientras éste estaba en sesión, la alegada agresión del acusado en la persona del Magistrado de la corte inferior, carecía de jurisdicción, y cometió grave error la Corte de Distrito de San Juan, al condenar al acusado por el delito de desacato, sin práctica alguna de evidencia, error éste, que demanda la revocación de la sentencia."

Se admite en tal virtud que el hecho del asalto al juez de haberse cometido constituye un delito de desacato, pero se impugna el procedimiento seguido para castigar al acusado.

█ La ley sobre la materia en Puerto Rico está contenida en el artículo 145 del Código Penal, ed. 1937, pág. 85, integrado por la ley de marzo 8, 1906, pág. 32, enmendando la de marzo 1, 1902, "definiendo el delito de desacato y dis-

poniendo la pena correspondiente'', cuya sección 3, lee en lo pertinente como sigue:

"Cuando se comete un desacato a la inmediata presencia y vista de una corte de justicia, podrá imponerse en el acto el correspondiente castigo por el juez de la corte o juez presidente de la misma. Cuando se acuse a una persona de desacato cometido fuera de la presencia de la corte, no podrá declarársele convicta sin habérsele dado previamente oportunidad para comparecer y defenderse del cargo. . . . .''

Reconoce, pues, la ley, dos formas de desacato. En la primera incluye el cometido a la inmediata presencia de una corte de justicia. En la segunda aquél en que se acusa ante la corte a la persona que fuera de la presencia de la corte lo comete. Para ambas señala el procedimiento que debe seguirse para la imposición del correspondiente castigo.

Cuando se trata de un desacato cometido a la inmediata presencia y vista de la corte, ésta podrá castigarlo en el acto. Cuando se trata de uno perpetrado fuera de la presencia de la corte, es necesario dar a la persona acusada oportunidad para comparecer y defenderse del cargo. En el primer caso el desacato es directo; en el segundo constructivo.

En ello la ley puertorriqueña es igual a la de los estados y territorios de la Unión. "Como regla general", se dice en 12 Am. Jur. sec. 70, pág. 437, "cuando el desacato se comete en la presencia de la corte (facie curiae), ésta puede al castigar al acusado, actuar sobre la base de su propio conocimiento, sin necesidad de otra prueba o examen, y el acusado no tiene derecho a ser oído en su propia defensa, ni puede quejarse de haberse infringido sus derechos constitucionales por habérsele negado audiencia. La corte, sin embargo, puede, en el ejercicio de su discreción, conceder audiencia antes de sentencia. Con respecto a desacatos constructivos, o sea aquéllos que se cometen sin la actual presencia de la corte, es esencial que se celebre una audiencia

y que se permita al acusado, si lo desea, que interponga su defensa a los cargos antes de ser castigado."

 Si el desacato por virtud del cual se castigó al apelante fuese directo, no habría lugar a la más leve contención. Si fuere constructivo, o de dudosa naturaleza, entonces requiere detenido estudio.

¿Fué directo, esto es, se cometió a la inmediata presencia de la corte?

Para contestar debidamente la pregunta, tenemos que fijar primero bien qué se entiende por presencia de la corte.

En la propia obra citada, American Jurisprudence, resumiendo la jurisprudencia sobre el particular, se dice:

"Al definir qué se entiende por 'presencia de la corte', tal y como se emplea dicha expresión con referencia al delito de desacato, se dice que 'la corte' consiste no sólo del juez, la sala del tribunal, el jurado o el salón del jurado si que de todos éstos combinados. La corte se halla presente dondequiera que alguno de sus elementos constitutivos se encuentre entregado a la labor del tribunal de acuerdo con la ley. Se sostiene en algunos estados que cualquier acto dirigido a impedir u obstruir a la corte en la debida administración de la justicia, debe considerarse como cometido en la presencia del tribunal. En otros estados se sostiene que sólo aquellos desacatos que se cometen dentro de un radio de visión ocular deben considerarse como cometidos en la 'presencia de la corte'. En algunas ocasiones los tribunales han considerado los hechos del caso objeto de revisión, y han decidido si el desacato imputado fué cometido en la presencia de la corte sin establecer ningún principio definitivo a ese respecto." 12 Am. Jur., sec. 5, pág. 392.

Aquí el desacato no se cometió cuando la corte se hallaba en sesión. La corte estaba ventilando un proceso por asesinato. La sesión fué suspendida. El jurado quedó constituído en el salón destinado al efecto en los altos del edificio de la corte. Poco después de la suspensión, en momentos en que el juez salía de su despacho y caminaba por el pasillo contiguo a la sala del tribunal, fué asaltado por el acusado.

No se expresa en la orden el motivo del asalto ni si estaba o no relacionado con algún asunto de la corte en

general o con el caso que se ventilaba en particular. Sí se consigna en ella que la conducta del acusado no solamente tendió a interrumpir los procedimientos de la corte si que a sembrar el terror en el jurado y en cualquier otro funcionario del tribunal, entendiendo la corte que constituía un desacato porque menoscaba el prestigio de las cortes de justicia.

No se trata en tal virtud del caso típico del desacato directo cometido cuando la corte está en sesión, en que el acto que lo constituye se realiza no sólo en presencia de su juez si que en la de los otros funcionarios de la misma incluyendo abogados, de las partes y del público, pero no puede dudarse que habiéndolo sido en presencia de su juez bajo las circunstancias y con el resultado especificados en la orden, podría calificarse de directo de acuerdo con la jurisprudencia citada.

Sin embargo, no constando que el acto realizado estuviera relacionado con el trabajo de la corte, dato necesario para que el caso cayera de lleno dentro de los hechos del de *Ex Parte McCown,* (139 N.C. 95, 2 L.R.A. (N.S.) 603, 51 N.E. 957), 18 A.L.R. 214, dudamos de si la indicada calificación puede darse para ser reconocida en todos sus efectos. Y tratándose de un caso en esas condiciones, nos parece que la mejor práctica es seguir para el castigo el procedimiento que fija el legislador para los desacatos constructivos en cuanto sea posible y necesario. *Ex parte Redmon,* 159 Miss. 449, 132 So. 330.

Así parece que lo entendió la propia corte de distrito, pues no castigó al apelante en el acto, ni siquiera cuando aceptó los hechos que se le imputaban, si que el mismo día del suceso—febrero 1, 1939—libró una orden con todos los requisitos de ley, describiendo los hechos en la forma que conocemos y señalando el día tres de febrero, 1939, a las nueve a. m., para que el acusado compareciera y expusiera "las razones por las cuales no deba ser castigado por desacato."

Compareció en efecto el acusado ¿y qué ocurrió? La única fuente de conocimiento que tenemos para enterarnos es el segundo de los documentos anteriormente transcritos, a saber, el "acta del juicio y la sentencia", ya que el apelante dejó de completar el récord con las notas que él mismo solicitó para ello.

El acusado, que había aceptado dos días antes los hechos consignados en la orden, los negó y reprodujo "las alegaciones que había hecho en corte el día 1 de febrero", alegaciones que no sabemos cuáles son.

Inmediatamente la corte procedió a dictar sentencia declarando probados los referidos hechos basada en el conocimiento que de los mismos tenía por haber sido su juez el asaltado, y concluyendo que constituían desacato, impuso la pena que creyó pertinente al acusado.

No consta que el acusado levantara objeción alguna al procedimiento seguido, ni que manifestara siquiera su propósito de contrainterrogar al juez, de ofrecer evidencia, o de explicar su conducta.

En apelación sostiene que se le condenó sin prueba. Hemos leído cuidadosamente su alegato y encontramos ciertamente en él repetida varias veces la afirmación de que tratándose de un desacato constructivo, era necesaria la práctica de prueba, pero en ninguna parte del mismo se discute el valor probatorio que pueda tener el conocimiento personal que de los hechos necesariamente tenía el juez de la corte sentenciadora.

Claro es que ese conocimiento personal, que no es el judicial de que habla la ley de evidencia, no sería prueba en un caso civil o criminal corrientes, pero tratándose de un desacato en el que el mismo legislador lo considera no ya bastante si que único cuando el hecho ocurre en la presencia de la corte, ¿no debe considerarse como legal y suficiente, aunque el hecho no ocurra ante la corte reunida en sesión si que ante su juez solamente?

Para apoyar su conclusión de que el acusado no pudo ser condenado "sin la práctica de la correspondiente evidencia evacuada conforme lo determina la legislación vigente en nuestra jurisdicción en relación con la admisión o no admisión de prueba", cita el apelante 12 Am. Jur., sec. 74, pág. 441, y en efecto dice el autor que en tanto en cuanto sea practicable las reglas generales de evidencia regirán para los procedimientos de desacato, pero al particularizar y al citar casos para sostener el texto se observa que la prueba siempre se introduce sobre hechos de los cuales el juez de la corte que interviene sólo podría tener conocimiento a virtud de testimonios extraños. En ningún caso concurren las circunstancias que en éste.

Siendo ello así, no creemos que pueda sostenerse que no hubo prueba. La corte actuó en cuanto a ese extremo como hubiera actuado si de un desacato directo se tratara y pudo hacerlo porque los hechos ocurrieron en su inmediata presencia. No había necesidad de otra prueba de cargo, y era al acusado al que entonces correspondía destruirla si ello le era posible mediante repreguntas—pidiendo formalmente al juez que declarara como testigo—o a virtud de la presentación de cualquiera otra evidencia pertinente, y si no podía destruirla, por lo menos mitigar su efecto en su contra mediante cualquier evidencia o explicación tendiente a explicar su conducta.

Nada de eso hizo y por tanto no puede ahora quejarse. Aun tratándose de un desacato que tiene por lo menos muchas de las características del directo, la corte le dió amplia oportunidad de presentar su defensa y no se aprovechó de ella, optando porque se le condenara para recurrir a esta corte con un récord incompleto que ni siquiera nos permite conocer en todos sus detalles lo sucedido en las sesiones del primero y el tres de febrero de 1939.

Durante la discusión del caso en el seno del tribunal se llamó fuertemente la atención hacia lo resuelto por la Corte

Suprema de los Estados Unidos en el de *Cooke* v. *United States*, 267 U. S. 517. Procederemos a su examen.

Clay Cooke y J. L. Walker fueron condenados cada uno a treinta días de prisión por desacato a la Corte de Distrito de los Estados Unidos del Distrito Norte de Texas. A virtud de auto de error, conoció del caso la Corte de Circuito de Apelaciones del Quinto Circuito, confirmando la sentencia en cuanto a Cooke y revocándola en cuanto a Walker. Por *certiorari,* la sentencia contra Cooke llegó a la Corte Suprema de los Estados Unidos, que revocó a la Corte de Circuito y remandó el caso a la corte de distrito para ulteriores procedimientos de conformidad con la opinión.

Walker fué el demandado en una serie de pleitos que surgieron como consecuencia de la quiebra de Walker Grain Company. En uno de ellos, tras un largo juicio, el Jurado rindió un veredicto de $56,000 contra Walker. Al siguiente día, mientras estaba abierta la corte ocupada en el juicio de otro caso, y durante un receso de diez minutos, Walker, por indicación de Cooke, entregó al juez de distrito en su despacho, adjunto a la sala de la corte, una carta marcada "Personal" por virtud de la cual Cooke, abogado de la Walker Grain Company, le decía que le permitiera sugerirle personalmente, como un abogado interesado en la causa de la justicia y la igualdad para todos y como su amigo, que la única orden que consentiría que se dictara en los procedimientos pendientes, sería una certificando su descalificación para seguir actuando, a causa de prejuicio.

Once días después la corte dictó una resolución exponiendo los hechos y concluyendo que el asunto era de conocimiento personal del juez de la corte y que la carta constituía un ataque contra el honor y la integridad de la corte y por consiguiente un desacato, ordenando al márshal que trajera inmediatamente a la presencia de la corte a Walker y a Cooke, litigante y abogado, para mostrar causa, si alguna tuvieren, por virtud de la cual no deberían ser castigados por desacato.

El márshal los arrestó y los trajo a la corte. Llamó ésta el asunto y dijo que había requerido al Juez McCormick, de Dallas, para que estuviera presente y actuara como un amigo de la corte en los procedimientos, habiendo además requerido al fiscal del distrito para que actuara por tratarse de un asunto de naturaleza criminal.

Cooke dijo que no había tenido conocimiento del procedimiento hasta aquella mañana, que le gustaría tener tiempo para prepararse para juicio y obtener testigos para su defensa, que existían circunstancias atenuantes que apelarían al sentido de justicia de la corte al fijar cualquier pena que pudiera imponerse y que había intentado obtener el auxilio de abogado pero que debido a la enfermedad o la ausencia de aquéllos con que había contado no lo había conseguido hasta entonces.

El Juez Wilson insinuó que no pospondría el asunto y dijo:

"Aquí está envuelta esta cuestión únicamente, y como se ha expuesto por el abogado que representa a la Corte, estos hechos están dentro del conocimiento personal de la Corte. ¿Entregó usted esta carta al Juez de esta Corte?

"Mr. Clay Cooke: ¿Está vuestro honor interrogándome? . . . ."

Y siguió un largo diálogo que ocupa las páginas 522 a 527 del volumen 267 de las Decisiones de los Estados Unidos, y que luego con lo anteriormente extractado, llevó a la corte a decir y a resolver, por medio de su Juez Presidente Sr. Taft, en parte, lo que sigue:

". . . . Considerando las circunstancias y el hecho de que el caso aún se hallaba bajo la consideración del juez, pero sin intentar privar al peticionario de su derecho a ser oído mediante prueba testifical y argumentación sobre esta cuestión al ofrecérsele oportunidad para ello, concurrimos con la Corte de Circuito de Apelaciones en que la carta era ofensiva.

"Pero, aun cuando llegamos a esta conclusión, estamos muy lejos de aprobar el curso del juez en el procedimiento, o falta del mismo, seguido por él al sentenciar al peticionario. El trató el caso como si las palabras ofensivas hubiesen sido proferidas contra él en corte abierta.

"Para mantener el orden en el salón de la corte y poder despachar debidamente sus asuntos, la corte debe actuar instantáneamente para reprimir una alteración del orden o la violencia o la obstrucción física de o falta de respeto a la corte, cuando ocurriere en corte abierta. No hay necesidad de evidencia ni de asistencia de abogado antes de que se imponga el castigo, porque la corte ha visto la ofensa. Esa sumaria vindicación de la dignidad y de la autoridad de la corte es necesaria. Siempre ha sido así en las cortes del derecho común, y el castigo así impuesto se ajusta al debido procedimiento de ley. Esa cuestión recibió gran consideración en la decisión de esta corte en *Ex Parte Terry*, 128 U. S. 289, 52 L. ed. 405. Se sostuvo allí que una corte de los Estados Unidos, al cometerse un desacato en corte abierta, podía, basándose en su propio conocimiento de los hechos y sin otra evidencia, sin establecer un *issue*, sin celebrar una vista y sin oír una explicación de los motivos que tuvo el acusado, proceder inmediatamente a determinar si los hechos justificaban el castigo y a imponer el castigo que considere adecuado de acuerdo con la ley.

"La distinción importante entre el caso de Terry y el presente es que este desacato no fué cometido en corte abierta. Esa distinción aparece plenamente en *Re Savin*, 131 U. S. 267, 33 L. ed. 150. El desacato en dicho caso consistió en un esfuerzo para atemorizar a un testigo que había sido citado por una corte de Estados Unidos, mientras se encontraba en un salón de espera para los testigos cerca del salón de la corte, para que no declarase, y haberle ofrecido dinero con igual fin en uno de los pasillos de la corte. Se resolvió que eso constituía conducta desordenada en la presencia de la corte, de acuerdo con la sección 725 de Rev. Stat. La corte por voz del Juez Harlan, dijo:

" 'Somos de opinión que, dentro del significado del estatuto, la corte, por lo menos mientras está en sesión, está presente en cada una de las partes del local destinado para su uso, y para el uso de sus funcionarios, jurados, y testigos; y una conducta desordenada en cualquier parte de ese local es conducta desordenada en presencia de la corte. Es cierto que el modo de proceder por desacato no es el mismo en cada caso de tal conducta desordenada. Cuando el desacato se comete directamente bajo el ojo o ante la vista de la corte, ésta puede proceder "basándose en su propio conocimiento de los hechos y castigar al ofensor, sin más pruebas y sin ninguna forma de juicio," *Ex parte Terry*, 128 U. S. 289, 309; mientras que en los casos de conducta irrespetuosa, de los cuales el juez no

puede tener tal conocimiento personal, y sobre los cuales resulta informado sólo por la confesión de la parte o por el testimonio de otros, prestado bajo juramento, la práctica apropiada es requerir, por orden u otro procedimiento, al ofensor para que comparezca y muestre causa por la cual no debe ser castigado. 4 Bl. Com. 286.'

"Esta diferencia entre el alcance de las palabras del estatuto 'en la presencia de la corte,' de una parte, y el significado de la frase más limitada 'bajo el ojo de la corte o dentro del radio de visión de la corte,' o 'en corte abierta' o 'ante la corte', o *'in facie curiae,'* de la otra, se halla por tanto claramente establecida y es más aún elaborada en la opinión.

"Creemos que la distinción tiene su razón no tanto en la habilidad del juez para ver y oír lo que sucede en corte abierta como en el peligro de que a menos que tal amenaza abierta al procedimiento ordenado de la corte y tal flagrante desafío a la persona y presencia del juez ante el público, en el 'muy sagrado recinto de la justicia,' como le llama Blackstone, sean inmediatamente reprimidos y castigados, la autoridad de la corte quedaría desmoralizada. El castigo sin controversia (*issue*) o juicio era tan contrario a la audiencia antes de sentencia, usual y ordinariamente indispensable para constituir un debido proceso de ley, que se requirió la asunción de que la corte vió todo lo que ocurrió en corte abierta para justificar la excepción; pero fué la necesidad de una vindicación penal inmediata de la dignidad de la corte la que creó la excepción.

"Sin embargo, cuando el desacato no ha sido cometido en corte abierta, no existe tal derecho o razón para prescindir de la necesidad de formular una acusación y de dar al acusado una oportunidad de presentar su defensa mediante testigos y argumentación. La forma exacta del procedimiento al procesar tales desacatos no resulta importante. La Corte, en *Randall* v. *Bringham,* 7 Wall. 523, 540, al hablar de lo que era necesario en los procedimientos seguidos contra un abogado por *malpractice* dijo lo siguiente:

" 'Todo lo que es requerido para su validez es que, cuando no son seguidos por razón de hechos que ocurren en corte abierta en la presencia de los jueces, se notifique al abogado sobre los hechos imputados y se le dé una oportunidad de explicarlos y de establecer su defensa. La forma en que se conducirán los procedimientos para que éstos no resulten opresivos o injustos, es una cuestión sujeta a reglamentación judicial.'

"La Corte, en el caso de *Savin, peticionario*, 131 U. S. 267, aplicó esta regla a procedimientos en casos de desacato.

"Debido procedimiento de ley, por consiguiente, al procesar por desacato, excepto cuando el mismo se comete en corte abierta, requiere que el acusado sea notificado de los hechos imputados y que se le dé una oportunidad razonable para controvertirlos estableciendo su defensa, o explicándolos. Somos de opinión que esto incluye la asistencia de abogado, si así se solicita, y el derecho a llamar testigos para que presten testimonio tendiente, ya a probar la no culpabilidad, o a explicar la ofensa y tratar de mitigar la pena a ser impuesta. Véase *Hollingsworth* v. *Duane*, 12 Fed. Cases 359, 360; *In re Stewart*, 118 La. 827; *Ex parte Clark*, 208 Mo. 121.

"El procedimiento en este caso no fué conducido de acuerdo con los principios arriba expuestos. Hemos establecido extensamente en la relación que precede a esta opinión la substancia de lo que ocurrió antes, en y después de dictarse la sentencia. El primer paso de la corte fué expedir una orden de arresto y la detención del peticionario. No se demuestra que el mandamiento de arresto contuviese una copia de la orden de la corte, y no se ha demostrado que el peticionario tuviese una idea exacta del significado de los hechos imputados hasta que la orden fué leída. En tal caso, y luego de tan larga demora, parecería ser la práctica apropiada, tal cual la expone Blackstone, 4 Comentarios 286, el expedir una orden para mostrar causa. La orden debió haber contenido lo suficiente para informar al demandado sobre la naturaleza del desacato imputado. Véase *Hollingsworth* v. *Duane*, 12 Fed. Cases 367, 369. Sin haberse alegado razones que hicieran suponer que una orden no habría hecho comparecer a los supuestos acusados, resultó opresivo, dadas las circunstancias, el ordenar el arresto.

"Después que la corte obtuvo del peticionario la admisión de que él había escrito la carta, le negó tiempo para conseguir o consultar un abogado, preparar su defensa y llamar testigos, y esto a pesar de haber la propia corte tomado tiempo para llamar a un letrado en calidad de amigo de la corte. También consiguió la corte la comparecencia del Fiscal de los Estados Unidos alegando que se trataba de un caso criminal.

"La corte procedió bajo la teoría de que la admisión del peticionario al efecto de que él había escrito la carta, excluía la presentación de evidencia o argumentación. En casos de esta índole, donde la intención con que se han cometido los actos constitutivos de desacato, debe, necesaria y propiamente tener una importante influencia en el grado de culpabilidad y en la pena a ser impuesta, la corte no puede excluir evidencia tendiente a aminorar la ofensa. Es una

parte integrante de la defensa. Hubo una sugestión en uno de los comentarios del peticionario a la corte al efecto de que, si bien él había dictado la carta, no la había leído cuidadosamente, y que había confiado en el consejo de su socio al enviarla; pero no se le dió una oportunidad para presentar testigos o hacer una completa manifestación a este respecto. Fué interrumpido por la corte o por el abogado de la corte cada vez que intentó ofrecer alguna explicación. Por otra parte, al proceder la corte a dictar sentencia hizo comentarios sobre la conducta observada por el peticionario y su cliente al hacer ofensivas imputaciones en las alegaciones en contra de los oficiales de la corte, e imputaciones de una conspiración fraudulenta hechas al síndico y juez de quiebras, y al emplear un detective para que espiara a los jurados mientras éstos estaban bajo la custodia del márshal y luego para descubrir si intentaba sobornarlos, en prueba de lo cual la corte se refirió a la declaración jurada del detective que estaba en su poder, y que no fué sometida al peticionario ni a su cliente. Al impugnar Walker esto, la corte instruyó al márshal para que éste impidiera cualquier subsiguiente interrupción. Resultó evidente que la corte consideró los hechos así expresados como un agravante del desacato. Sin embargo, ninguna oportunidad había sido dada a los acusados ni aún para escuchar estas nuevas imputaciones de la corte y menos aun para controvertirlas o explicarlas, antes de pronunciarse la sentencia. Somos de opinión que el procedimiento observado fué opresivo e injusto al peticionario.''

Hemos citado en extenso la opinión de la Corte Suprema porque hablando por sí misma revela cuán distinto es en verdad el caso de Cooke del presente, no obstante la semejanza que parece existir al principio y leyendo sólo algunos pasajes de la opinión.

En primer lugar los hechos constitutivos del desacato se realizaron en forma esencialmente diferente. En el de Cooke por medio de una carta entregada en el despacho del juez que pudo o no ser leída en el acto sin que interfiriera con los procedimientos de la corte. En éste de Torres, por virtud de un asalto personal al juez que estaba dedicado a la dirección de un proceso criminal por asesinato, poco después de haber sido suspendida la sesión, en momentos en que salía de su despacho y se encontraba en el pasillo contiguo

a la sala del tribunal, asalto que tendió a interrumpir los procedimientos de la corte y a sembrar el terror en el jurado que estaba constituído, según se notificó expresamente al acusado por la orden de febrero 1, 1939, citándolo para que compareciera el tres.

En el caso de Cooke se ordenó la comparecencia inmediata de los acusados. En éste de Torres, como acabamos de ver, se le dieron tres días que luego se extendieron a cinco.

En el caso de Cooke se negó a los acusados el auxilio de abogado, no obstante solicitarlo. Aquí Torres compareció siempre asistido de sus abogados.

En el caso de Cooke, éste intentó explicar, defenderse, demostrar que existían circunstancias atenuantes, y todo le fué rehusado. En éste, nada hizo Torres. Nada suscitó. Y trajo un récord incompleto a la corte de apelación.

Fué el ambiente de arbitrariedad en que se desarrolló, sin duda, el que llevó a la Corte Suprema en el caso de Cooke a revocar la sentencia de la Corte de Circuito y a devolverlo a la corte de distrito para ulteriores procedimientos. Movida por el impulso de la justicia, algunas de sus expresiones van tal vez demasiado lejos. Ella misma, cuatro años más tarde, en el caso de *Sinclair* v. *United States*, 279 U. S. 749, 767, dijo:

"El lenguaje empleado en una opinión debe ser siempre leído a la luz de las cuestiones presentadas. A Cooke no se le concedió una debida oportunidad en ningún momento durante el curso del procedimiento para exponer los hechos que podrían excusar o mitigar su conducta, y las palabras citadas iban dirigidas a esa situación. Aquí hubo amplia oportunidad para poder presentar cualquier cosa de verdadera importancia."

■ Una última cuestión se levanta en el alegato del apelante, a saber:

"Que la Corte inferior cometió error al juzgar al acusado por el delito de desacato, precisamente el mismo Magistrado contra el cual se decía se había cometido la agresión personal."

El desacato, como repetidamente se ha sostenido no ya a través de años si que de siglos, es un procedimiento *sui generis* que exige la inmediata intervención de la corte y en el que siempre se ha reconocido al propio juez desacatado la facultad de intervenir. Y es que lo que se ofende no es la persona del juez sino la dignidad de la corte y lo que se interrumpe es la ordenada administración de la justicia.

Ahora bien, si ello es posible, a fin de que no quede en la conciencia individual ni en la social la más leve idea de un procedimiento arbitrario, parece lo propio que el juez desacatado en casos como éste en que se trata de un asalto personal, se abstenga de intervenir y traslade el conocimiento del asunto a algún otro juez que como él tenga la facultad y el deber de intervenir. El dejar de hacerlo, sin embargo, no constituye error que lleve consigo la revocación de la sentencia.

Parece conveniente transcribir lo que sobre el particular dijo la Corte Suprema en el propio caso de Cooke. Es así:

"El poder de castigar por desacato que un juez debe tener y ejercitar para proteger la debida y ordenada administración de justicia y mantener la autoridad y dignidad de la corte es importantísimo e indispensable. Pero su ejercicio es muy delicado, y se necesita cuidado para evitar conclusiones arbitrarias u opresivas. Esta regla de caución es más mandatoria cuando el desacato imputado lleva envuelto el elemento de crítica o ataque personal contra el juez. El juez debe despojarse del más ligero impulso personal de represalia, pero no debe hacerlo hasta el extremo de hacer daño a la autoridad de la corte siendo demasiado benigno. La substitución de otro juez evitaría una y otra tendencia, pero eso no es siempre posible.

\* \* \* \* \* \* \*

"Todo lo que podemos decir sobre esta materia es que cuando las condiciones no lo hacen impracticable, o cuando la dilación no ha de perjudicar algún derecho público o privado, un juez llamado a actuar en un caso de desacato consistente en un ataque contra él, puede, sin desviarse por ello de su deber, correctamente pedir a uno de sus colegas que ocupe su lugar. (Citas.)

"El caso ante nos es uno en el que la controversia entre el juez y las partes llegó a envolver un resentimiento personal marcado, que no era propicio para una imparcial y tranquila consideración y conclusión judiciales, según aparece abundantemente de la relación de los procedimientos. Creemos, por consiguiente, que cuando este caso vuelva de nuevo a la corte de distrito a la que debe ser devuelto, el juez que impuso la sentencia debería invitar al juez presidente de la Corte de Circuito a designar otro juez para que presida la segunda vista de los cargos contra el peticionario."

*Por virtud de todo lo expuesto, debe declararse el recurso sin lugar y confirmarse la sentencia apelada.*

El Juez Asociado Sr. Wolf está conforme con la resolución y con la mayor parte y el espíritu de la opinión, pero desea hacer constar que a su juicio el desacato cometido fué directo.

OPINION DISIDENTE DEL JUEZ ASOCIADO SEÑOR TRAVIESO

El día primero de febrero de 1939 el Hon. Marcelino Romany, Juez de la Corte de Distrito de San Juan, expidió una orden requiriendo al individuo Manuel Torres para que compareciera ante dicho juez a mostrar las razones por las cuales no debiera ser castigado por desacato. En el preámbulo de dicha orden, como hechos constitutivos del alegado desacato, se expone: que en el día de autos mientras se estaba ventilando ante la Corte de Distrito un proceso por asesinato, en el cual se había ya constituído un jurado, el Juez Romany "fué *asaltado* por el acusado poco después de haber sido suspendida la sesión de la corte, en momentos que el juez salía de su despacho, y precisamente en el pasillo contiguo a la sala del tribunal"; que la conducta del acusado tendió a interrumpir los procedimientos y a sembrar terror en el jurado que estaba constituído; y que el hecho constituye un desacato porque menoscaba el prestigio de las cortes de justicia.

El día señalado en la orden compareció el acusado asistido de abogado, y al ser preguntado por la corte qué tenía que alegar manifestó que negaba los hechos que se le impu-

taban. Acto seguido, la corte procedió a dictar sentencia por la que condenó al acusado a 30 días de cárcel y al pago de una multa de $200.00. Contra dicha sentencia el acusado interpuso el presente recurso de apelación, en el que señala como error del tribunal sentenciador el de haber condenado al acusado por un delito de desacato no cometido en la inmediata presencia de la corte, sin haber practicado prueba alguna.

No existe controversia alguna en cuanto a que los hechos expuestos en la orden para mostrar causa, de ser ciertos, son constitutivos de un desacato; y que ese desacato debe ser castigado severamente, en defensa del prestigio de los tribunales, a quienes los ciudadanos deben acatamiento y respeto.

La cuestión debatida por la defensa y el fiscal y que ha originado interesante discusión entre los miembros de este tribunal, es la siguiente:

¿Erró la corte sentenciadora al condenar al acusado, no obstante su negación de los hechos imputádosle, sin practicar prueba tendiente a substanciar dichos hechos?

Cualquier acto o conducta que tienda a impedir u obstruir y que impida u obstruya a una corte en la administración de justicia, o que menoscabe su autoridad o dignidad es un desacato. El desacato puede ser directo o indirecto o constructivo. En la obra "National Lawyers' Manual Contempt," de Dangel (1939 ed.) encontramos las siguientes definiciones:

"7. *Desacato Directo.* Un desacato directo consiste en algo hecho o dejado de hacer, en presencia de la corte, tendiente a impedir o interrumpir sus procedimientos o poner en duda su integridad. Ocurre solamente cuando el acto constitutivo del desacato ha sido realizado en la presencia de la corte. Es un insulto cometido en la presencia de la corte, o de un juez mientras está actuando como tal, o una resistencia a o interferencia en contra de la autoridad legal de la corte o del juez en su presencia, o conducta impropia tan cerca de la corte o del juez actuando judicialmente que interrumpa o dilate los procedimientos judiciales.

"8. *Desacato Indirecto.* Es sinónimo del desacato constructivo. Consiste en un acto tendiente a obstruir o impedir la debida administración de justicia, *cometido a una distancia y no durante la sesión de la corte* ni a su inmediata vista y presencia. Un desacato indirecto o constructivo es un acto realizado, *no en la presencia de la corte o de un juez mientras actúa judicialmente,* si que a una distancia, bajo circunstancias que razonablemente tendían a degradar la corte o al juez como un funcionario judicial, o a obstruir, interrumpir o impedir la administración de justicia por la corte o juez." (Bastardillas nuestras.)

Véanse: 23 A.L.R. 183; 27 A.L.R. 1219; 31 A.L.R. 1226; 49 A.L.R. 647; *Globe Newspaper Co.* v. *Com.,* 188 Mass. 449; *Hurley* v. *Com.* 188 Mass. 443; *Blackenburg* v. *Com.,* 272 Mass. 25; Bailey on Habcas Corpus, sec. 62, pág. 212; *Weldon* v. *State,* 234 S. W. 466; y *Turquette* v. *State,* 298 S. W. 15.

De acuerdo con los hechos expuestos en la orden para mostrar causa, el acto que se imputa al acusado Manuel Torres es constitutivo de un desacato criminal indirecto o constructivo. Es criminal, porque la agresión a la persona del juez, cometida bajo las circunstancias expuestas en dicha orden, afecta la autoridad, prestigio y dignidad de la corte y tiende a impedir la libre y correcta administración de la justicia. Es indirecto o constructivo, porque el alegado "asalto" o acometimiento no ocurrió cuando la corte estaba en sesión, ni en la inmediata presencia de la corte, ni tan cerca de la corte en sesión que tendiera a interrumpir los procedimientos, ni tampoco en momentos en que el juez agredido estuviera realizando funciones judiciales. El hecho se realizó "después de haber sido suspendida la sesión de la corte, en momentos en que el juez salía de su despacho, y precisamente en el pasillo contiguo a la sala del tribunal."

Todas las autoridades convienen en que cuando se trata de un desacato directo, cometido a la inmediata presencia de la corte o tan cerca del sitio en que la corte se encuentra en sesión, que tienda a interrumpir sus procedimientos, la corte tiene facultad inherente para imponer el castigo suma-

riamente, sin necesidad de practicar prueba. Esa facultad está además expresamente concedida a las cortes por la sección 3 de la ley de 8 de marzo de 1906 (enmendando la de 1 de marzo de 1902) que dispone que "cuando se comete un desacato a la inmediata presencia y vista de una corte de justicia, podrá imponerse en el acto el correspondiente castigo por el juez de la corte o juez presidente de la misma." En la citada obra, N.L.M. "Contempt," a la página 206, se dice:

"La tendencia de las cortes en los tiempos modernos es la de que aun en casos de desacato directo deben seguirse procedimientos mediante los cuales se informe al acusado formalmente, de palabra o por escrito, acerca de los hechos que se alegan como constitutivos de desacato, dándole completas y detalladas especificaciones. Debe requerirse una vista ante la corte, y la presentación de pruebas que establezcan la culpabilidad del acusado, es necesaria." (Cita: *Blackenburg* v. *Com.*, 272 Mass. 25.)

En el caso de autos el juez sentenciador opinó, y así lo hizo constar en su sentencia, "que no es necesario practicar prueba en un procedimiento de desacato en el cual el juez es la persona agredida, puesto que el juez no puede pasar sobre ninguna prueba, ya que tiene conocimiento personal de los hechos, y no podría resolver jamás que no fué cierta una agresión cuando al juez personalmente le constaba tal hecho, siendo, por tanto, completamente inútil la presentación de prueba."

Cuando, como en el presente caso, se trata de un desacato indirecto o constructivo, el acusado tiene derecho a que se formule una acusación y se celebre una vista, en la que deberá tener una oportunidad de confrontarse con los testigos de cargo y presentar los de defensa. El conocimiento personal que de los hechos pueda tener el juez sentenciador, no puede ocupar el lugar de la evidencia en que debe basarse toda convicción y sentencia.

"La sentencia de desacato no debería ser dictada sin que alguna evidencia haya sido recibida por la corte, basándose en hechos que

constan solamente en la mente del juez, pero que no son materia de récord en el caso. A menos que ésta sea la regla, la finalidad de la sentencia o convicción no podría ser nunca atacada por razón de algún hecho dentro del conocimiento, o asumido conocimiento, del juez, que no conste en el récord, y, que al ser revisado por la corte de apelación no se haga parte del récord en apelación. El conocimiento personal de un hecho por parte del juez sentenciador, que no sea de conocimiento general, no es suficiente para hacer innecesaria la prueba de ese hecho, o por lo menos el conocimiento de ese hecho por el juez se debe hacer constar en el récord. La razón para esto es importante, porque si el juez dicta una sentencia de convicción basándose en hechos conocidos por él o que él cree conocer, sin que en el momento tome conocimiento judicial de esos hechos incorporándolos al récord, en ese caso no se da al acusado, al invocar la invalidez de la sentencia, una oportunidad de controvertir los hechos en la mente del juez y no se da una oportunidad a la corte de apelaciones para que conozca los hechos conocidos por el juez, o que el juez creyó conocer, pero que no son comúnmente conocidos.

"Cuando el desacato no se ha cometido en corte abierta, no hay derecho ni razón para prescindir de la necesidad de formular cargos y de dar una oportunidad al acusado para presentar su defensa mediante testigos y argumentación. N. L. M. "Contempt," págs. 206–207.

La necesidad de practicar prueba en un caso de desacato criminal indirecto es evidente. El acusado está amparado por la presunción legal de inocencia hasta que su culpabilidad sea establecida más allá de toda duda razonable. El peso de la prueba en procedimientos de desacato criminal recae sobre el querellante, y éste está obligado a probar las alegaciones de desacato más allá de toda duda razonable. Al acusado no se le puede obligar a declarar en su contra. Véanse: N.L.M. "Contempt," págs. 76 y 242; *Michaelson v. U. S.*, 266 U. S. 42; *Gompers v. Bucks Stove & Range Co.*, 221 U. S. 418, 441; *People v. Spain*, 307 Ill. 283; *Com. v. Madeiros*, 255 Mass. 304; *Clark v. U. S.*, 289 U. S. 1; 35 A.L.R. 451; *Root v. Mac Donald*, 260 Mass. 344.

El caso de *Cooke v. United States*, 267 U. S. 517, 69 L. Ed. 767, presenta hechos similares al del caso de autos y

sienta la doctrina aplicabale a situaciones como la que estamos considerando. El abogado Cooke y su cliente Walker fueron sentenciados por la Corte Federal de Distrito a 30 días de cárcel por desacato. Walker había sido demandado en varios pleitos y en uno de ellos el jurado le condenó al pago de $56,000. El día siguiente al del veredicto, *mientras la corte . estaba abierta y celebrando otro juicio,* durante un receso para descansar diez minutos, Walker, siguiendo instrucciones de su abogado, entregó al juez en su despacho, a pocos pies del salón de la corte, una carta marcada "Personal," en la que haciendo referencia a los litigios pendientes en los cuales Walker era parte demandada, el abogado le aconsejaba y suplicaba al juez que se inhibiese en dichos asuntos, evitándole así al abogado el tener que recusarlo formalmente. En la carta se le imputaba al juez pasión, prejuicio y parcialidad en contra de Walker. La sentencia fué confirmada por la Corte de Circuito. Llevado el caso ante la Corte Suprema Federal, por *certiorari,* ésta revocó la sentencia y devolvió el caso a la corte inferior para nuevos procedimientos de acuerdo con la opinión, emitida por voz de su Juez Presidente Taft. La Corte Suprema, después de convenir con la corte inferior en que la carta en cuestión era constitutiva de un desacato, dijo:

"Pero, aun cuando llegamos a esta conclusión, estamos muy lejos de aprobar el curso del juez en el procedimiento, o falta del mismo, seguido por él al sentenciar al peticionario. *Él trató el caso como si las palabras ofensivas hubiesen sido proferidas contra él en corte abierta.*

"Para mantener el orden en el salón de la corte y poder despachar debidamente sus asuntos, la corte debe actuar instantáneamente para reprimir una alteración del orden o la violencia o la obstrucción física de o falta de respeto a la corte, *cuando ocurrire en corte abierta.* No hay necesidad de evidencia ni de asistencia de abogado antes de que se imponga el castigo, porque la corte ha visto la ofensa. Esa sumaria vindicación de la dignidad y de la autoridad de la corte es necesaria. Siempre ha sido así en las cortes del derecho común, y el castigo así impuesto se ajusta al debido procedimiento de ley.

Esa cuestión recibió gran consideración en la decisión de esta corte en *Ex Parte Terry*, 128 U. S. 289, 32 L. Ed. 405. Se sostuvo allí que una corte de los Estados Unidos, *al cometerse un desacato en corte abierta*, podía, basándose en su propio conocimiento de los hechos y sin otra evidencia, sin establecer un *issue*, sin celebrar una vista y sin oír una explicación de los motivos que tuvo el acusado, proceder inmediatamente a determinar si los hechos justificaban el castigo y a imponer el castigo que considere adecuado de acuerdo con la ley.

"La distinción importante entre el caso de Terry y el presente es que este desacato no fué cometido en corte abierta. Esa distinción aparece plenamente en *Re Savin*, 131 U. S. 267, 33 L. Ed. 150. El desacato en dicho caso consistió en un esfuerzo para atemorizar a un testigo que había sido citado por una corte de Estados Unidos, mientras se encontraba en un salón de espera para los testigos cerca del salón de la corte, para que no declarase, y haberle ofrecido dinero con igual fin en uno de los pasillos de la corte. Se resolvió que eso constituía conducta desordenada en la presencia de la corte, de acuerdo con la sección 725 de los Estatutos Revisados. La corte por voz del Juez Harlan, dijo:

" 'Somos de opinión que, dentro del significado del estatuto, la corte, *por lo menos mientras está en sesión,* está presente en cada una de las partes del local destinado para su uso, y para el uso de sus funcionarios, jurados, y testigos; y una conducta desordenada en cualquier parte de ese local es conducta desordenada en presencia de la corte. Es cierto que el modo de proceder por desacato no es el mismo en cada caso de tal conducta desordenada. Cuando el desacato se comete directamente bajo el ojo o ante la vista de la corte, ésta puede proceder basándose en su propio conocimiento de los hechos y castigar al ofensor, sin más pruebas y sin ninguna forma de juicio.' . . . .

"Creemos que la distinción tiene su razón no tanto en la habilidad del juez para ver y oír lo que sucede en corte abierta como en el peligro de que a menos que tal amenaza abierta al procedimiento ordenado de la corte y tal flagrante desafío a la persona y presencia del juez ante el público, en el 'muy sagrado recinto de la Justicia,' como le llama Blackstone, sean inmediatamente reprimidos y castigados, la autoridad de la corte quedaría desmoralizada. El castigo sin controversia (*issue*) o juicio era tan contrario a la audiencia antes de sentencia, usual y ordinariamente indispensable para constituir un debido proceso de ley, que se requirió la asunción de que

la corte *vió todo lo que ocurrió en corte abierta* para justificar la excepción; pero fué la necesidad de una vindicación penal inmediata de la dignidad de la corte la que creó la excepción.

"Sin embargo, cuando el desacato no ha sido cometido en corte abierta, no existe tal derecho o razón para prescindir de la necesidad de formular una acusación y de dar al acusado una oportunidad de presentar su defensa mediante testigos y argumentación."

En el caso de autos el acusado fué informado suficientemente de los hechos que se le imputaban. La negación que de dichos hechos hizo el acusado levantó un *issue* igual al que levanta una alegación de "no culpable." Y de ahí, tratándose de un desacato no cometido en corte abierta, surgió la necesidad de celebrar una vista y de sostener la acusación mediante evidencia. Al no hacerlo así se privó al acusado de un debido proceso de ley y la sentencia dictada en su contra es nula.

En el presente caso como en el de *Cooke* v. *United States,* supra, se ha señalado como error el que haya sido el mismo juez agredido el que conociera del caso y castigara al acusado. La Corte Suprema Federal, en el caso citado, al considerar dicha cuestión se expresó así:

"El poder de castigar por desacato que un juez debe tener y ejercitar para proteger la debida y ordenada administración de justicia y mantener la autoridad y dignidad de la corte es importantísimo e indispensable. Pero su ejercicio es muy delicado, y se necesita cuidado para evitar conclusiones arbitrarias u opresivas. Esta regla de caución es más mandatoria cuando el desacato imputado lleva envuelto el elemento de crítica o ataque personal contra el juez. El juez debe despojarse del más ligero impulso personal de represalia, pero no debe hacerlo hasta el extremo de hacer daño a la autoridad de la corte siendo demasiado benigno. La substitución de otro juez evitaría una y otra tendencia, pero eso no es siempre posible.

"* * * * * * *

"Todo lo que podemos decir sobre esta materia es que cuando las condiciones no lo hacen impracticable, o cuando la dilación no ha de perjudicar algún derecho público o privado, un juez llamado a actuar en un caso de desacato consistente en un ataque personal

contra él, puede, sin desviarse por ello de su deber, correctamente pedir a uno de sus colegas que ocupe su lugar. (Citas.)

"El caso ante nos es uno en el que la controversia entre el juez y las partes llegó a envolver un resentimiento personal marcado, que no era propicio para una imparcial y tranquila consideración y conclusión judiciales, según aparece abundantemente de la relación de los procedimientos. Creemos, por consiguiente, que cuando este caso vuelva de nuevo a la corte de distrito a la que debe ser devuelto, el juez que impuso la sentencia debería invitar al juez presidente de la Corte de Circuito a designar otro juez para que presida la segunda vista de los cargos contra el peticionario."

La objeción principal que tiene el suscribiente en contra de la propuesta confirmación de la sentencia es que el acusado apelante fué convicto sin que se presentase contra él evidencia alguna, o sea sin que se siguiese un debido proceso de ley. La necesidad de esa evidencia es manifiesta. Ni en la orden para mostrar causa, la cual no puede ser considerada como evidencia, ni en la sentencia se establece relación o conexión alguna entre la agresión al juez y el caso que se estaba tramitando ante la corte de distrito. La declaración del juez hubiera seguramente establecido esa conexión, la cual es absolutamente necesaria para que el acto, que no fué realizado en corte abierta, sea constitutivo de dasacato. Esta corte no tiene ante sí ningún récord o transcripción de evidencia para poder decidir si la convicción del acusado se basó en prueba suficiente. La confirmación de la sentencia tiene pues que basarse necesariamente en la presunción de que lo que el juez sentenciador tenía en su mente era evidencia legal y suficiente para justificar la convicción del acusado. No existe ley alguna que autorice tal presunción. Si la hubiera, su efecto sería el de destruir la presunción de inocencia que a su favor tiene todo acusado.

El precedente que ha de establecer la sentencia propuesta, o sea que un ciudadano puede ser privado de su libertad sin que contra él se presente evidencia alguna, por el solo hecho de que al juez que le acusa y que es el que ha de juzgarle le constan los hechos, es a nuestro juicio peligroso. Nada

perdería ni en nada se perjudicaría la dignidad y el prestigio de los tribunales si se sentase como doctrina legal la de que cuando el alegado desacato no ha sido cometido en la inmediata presencia de la corte en sesión y consiste en un acto ofensivo a la persona del juez, éste debe delegar en otro juez para que conozca del caso y debe declarar como testigo para sostener el cargo por él formulado y para dar al acusado una oportunidad de repreguntarle.

Por las razones expuestas disiento de la opinión de la mayoría y opino que la sentencia apelada debió ser revocada y el caso devuelto al tribunal inferior con la recomendación de que la nueva vista se celebrara ante uno de los otros tres jueces de la Corte de Distrito de San Juan.

Estoy autorizado por el Juez Asociado Sr. De Jesús para hacer constar que está conforme con esta opinión.