EL PUEBLO DE PUERTO RICO, querellante, *v.* JUAN VALLDEJULI RODRÍGUEZ, querellado.

Núm. 8.—*Sometido:* Junio 4, 1941.  *Resuelto:* Julio 10, 1941.

*R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados del querellante; *R. Cuevas Zequeira* y *Román Díaz Collazo,* abogados del querellado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El día 13 de julio de 1940 el fiscal auxiliar de este·tribunal radicó una querella contra Juan Valldejuli Rodríguez, abogado en ejercicio, en la que en sustancia se exponen los hechos siguientes:

Que el día 17 de enero de 1940, se celebró ante esta Corte Suprema la vista del caso de *certiorari* incoado por Carlos M. de Castro contra la Junta de Comisionados de San Juan; que en la mañana del día siguiente al de dicha vista, el querellado se personó ante el Juez Asociado de esta corte, Sr.

De Jesús, en su despacho en el Capitolio Insular de Puerto Rico, donde tiene su asiento esta Corte Suprema, y le manifestó: que en la tarde anterior, al salir el querellado de la oficina del márshal, después de haber informado ante la corte como abogado de la Junta de Comisionados en el mencionado caso de certiorari, mientras caminaba por la rotunda del Capitolio, una persona medio oculta en una de las columnas le apuntó con un revólver, dándose a la fuga cuando el querellado sacó el suyo; que el querellado no pudo reconocer a dicha persona, pero sí observar que usaba espejuelos; que esa misma tarde, un amigo suyo le informó que ese mismo día había visto a la persona que sacó el revólver, en una de las mesas de un café, en la parada 15 en Santurce, en compañía del Dr. Carlos M. de Castro y de su esposa, quienes estuvieron presentes durante la vista del caso.

Que al hacer las anteriores manifestaciones el querellado pidió al Juez Sr. De Jesús que las trasmitiera a la Corte Suprema, lo que hizo dicho magistrado.

Que los hechos relatados por el querellado al Juez Sr. De Jesús eran falsos, constándole allí y entonces al querellado la falsedad de los mismos, toda vez que lo cierto es que el querellado, una vez terminada la vista del caso, salió del Capitolio acompañado de Rafael Cestero, sin que ocurriera incidente alguno entre el querellado y persona otra alguna.

Que el querellado, al hacer el relato de dichos hechos para que fueran transmitidos al tribunal, lo hizo ilegal y voluntariamente y a sabiendas de que los hechos por él relatados eran falsos, con el propósito de influir indebidamente a los jueces de la Corte Suprema en contra de la parte opuesta a la defendida por él o sea en contra del Dr. Carlos M. de Castro.

Alega el Ministerio Público que los actos del querellado constituyen "conducta desdeñosa e insolente hacia este tribunal, tendente a intervenir con la libre administración de la justicia, todo en menoscabo del prestigio y dignidad de este tribunal."

Expedida, de acuerdo con la súplica de la querella, una orden requiriendo al querellado para que compareciera a exponer las razones que tuviere para no ser castigado por desacato, compareció el querellado en 23 de julio de 1940 y solicitó el archivo y sobreseimiento del caso, alegando:

Que la querella no aduce hechos constitutivos de desacato, según dicha delincuencia se define y castiga por los artículos 145 y siguientes del Código Penal:

(a) Porque no existiendo afirmación alguna de que los hechos que se tienen por delictivos ocurrieran en presencia de la Corte Suprema, o en el curso de una sesión de la misma, falta en la querella una alegación esencial para que se considere infringido el apartado primero del artículo 145 del Código Penal.

(b) Porque la intención específica que se imputa al querellado en el párrafo sexto de la querella, de tender a influir a los jueces en determinado litigio; y en el párrafo séptimo, de observar conducta desdeñosa e insolente hacia el tribunal, tendente a intervenir en la libre administración de justicia, son meras conclusiones de ley que no están sostenidas por una exposición de hechos que le sirvan de fundamento, ya que entre los que han sido alegados y las conclusiones expuestas no existe relación lógica de causa y efecto, de acuerdo con las reglas que gobiernan el criterio humano.

La resolución de las cuestiones previas planteadas por el querellado en su moción de sobreseimiento y archivo, depende de la interpretación que demos al apartado primero de la sección 1ª. de la Ley de Desacato, en el cual se consideran como desacato los actos siguientes:

"Perturbación del orden, ruido u otro disturbio, tendente *directamente* a interrumpir sus procedimientos, o conducta desordenada, desdeñosa o insolente, hacia un tribunal o juez *en presencia de dicho tribunal o durante una sesión del mismo, y tendente a interrumpir sus procedimientos.*" (Itálicas nuestras.)

Arguye el querellado que la querella es insuficiente porque en ella no se alega que los actos imputados al querellado ocurrieran *en presencia de la Corte Suprema o durante una sesión de la misma.*

No existe controversia alguna en cuanto a que el alegado falso relato que se atribuye al querellado no fué hecho mientras la Corte Suprema estaba constituída y celebrando una sesión. Y no creemos que pueda haber controversia en cuanto a que una relación de hechos falsos, hecha por un abogado a una corte en sesión, con el propósito de interrumpir sus procedimientos o de influir indebidamente en el ánimo de los jueces, es un acto constitutivo de desacato.

La perturbación del orden, el ruido u otro disturbio que tienda *directamente* a interrumpir los procedimientos de un tribunal de justicia, tiene que ocurrir necesaria y lógicamente cuando el tribunal está en sesión, para que sea constitutivo de desacato. Si ocurre en la inmediata presencia de la corte en sesión, el desacato es directo y puede ser castigado sumariamente; si ocurre, no en la inmediata presencia pero sí lo suficientemente cerca de la corte en sesión para interrumpir sus procedimientos, en ese caso el desacato es indirecto o constructivo, y la práctica corriente para castigarlo es formular una querella y dar al querellado una oportunidad de defenderse.

En el caso de *In re Castro,* 52 D.P.R. 139, en el que el propio abogado aquí querellado fué agredido en los pasillos de esta Corte Suprema, por palabras que acababa de pronunciar ante la corte en sesión, inmediatamente después de haberse ésta suspendido, se resolvió que la agresión de que fué víctima el abogado constituía un desacato y como tal fué castigado.

El querellado basa su oposición a la suficiencia de la querella en la decisión rendida por la Corte Suprema Federal, en abril 14, 1941, en el caso de *Nye* v. *United States,* 85 L. Ed. 733. Haremos un detenido análisis de la cuestión envuelta y resuelta en dicho caso.

Ante la Corte Federal para el "Middle District of North Carolina" se encontraba pendiente una acción incoada por un tal Elmore, como administrador de la herencia intestada de su hijo, para recobrar daños y perjuicios causados con motivo de la muerte de su hijo como consecuencia de haber tomado una medicina comprada a la demandada B. C. Remedy Co. Dos individuos, Nye y Mayers, por medio del uso de licor y de la persuasión indujeron al demandante Elmore a desistir del pleito pendiente. Nye hizo que su abogado preparase cartas dirigidas al juez de distrito y al abogado de Elmore expresivas del deseo de éste de desistir del pleito; y, además, el informe final de Elmore como administrador, para conseguir, como se consiguió, que la corte de testamentarías le relevase de las obligaciones de dicho cargo. Nye franqueó y depositó las cartas en el correo. Todos estos hechos fueron realizados a más de cien millas de distancia de Durham, North Carolina, donde tiene su asiento la corte de distrito.

Convictos y sentenciados por desacato ambos querellados y confirmada la sentencia por la Corte de Circuito, el caso fué llevado mediante auto de certiorari ante la Corte Suprema. La ley bajo la cual fueron convictos los querellados Nye y Mayers, es la Sección 268 del Código Judicial de los Estados Unidos (28 U.S.C.A. sección 385), aplicable solamente a las cortes federales, que lee así:

"Dichas cortes estarán facultadas para imponer y administrar todos los juramentos necesarios, y para castigar, con multa o prisión, a discreción de la corte, los desacatos a su autoridad: *Disponiéndose,* que dicha facultad para castigar los desacatos no será interpretada en el sentido de hacerla extensiva a cualesquiera casos excepto la conducta impropia (*misbehavior*) de alguna persona en su presencia, o tan cerca de ella que obstruya la administración de justicia, la conducta impropia de cualquiera de los funcionarios de dichas cortes en sus transacciones oficiales y la desobediencia o resistencia por uno de dichos funcionarios, o por cualquiera parte, jurado, testigo u otra persona a cualquier auto, providencia, orden, regla, decreto o mandato legal de dichas cortes."

La precedente sección tuvo su origen en la ley de marzo 1 de 1831 (4 Stat. at L. 487, chap. 99), la cual fué adoptada para corregir los abusos cometidos por las cortes federales al amparo de la ley hasta esa fecha vigente (act of Sept. 24, 1789, 1 Stat. at L. 73, 83, chap. 20), que disponía que las cortes de los Estados Unidos "tendrán facultad . . . para castigar con multa o prisión, a discreción de dichas cortes, todos los desacatos a su autoridad en cualquiera causa o vista ante las mismas." Las cortes federales inferiores reconocieron en sus decisiones posteriores a la ley de marzo 1 de 1831, que dicha ley había restringido substancialmente el hasta entonces indefinido poder de dichas cortes para castigar por desacato. Así lo reconoció también la Corte Suprema en *Ex Parte Wall,* 107 U. S. 265, 27 L. Ed. 552; *Re Savin,* 131 U. S. 267, 33 L. Ed. 150; *Re Cuddy,* 131 U. S. 280, 33 L. Ed. 154; y *Eilenbecker* v. *District Court,* 134 U. S. 31, 33 L. Ed. 801.

En el año 1918, la Corte Suprema sostuvo en *Toledo Newspaper Co.* v. *United States,* 247 U. S. 402, 62 L. Ed. 1186, que la sección 268 del Código Judicial, supra, autorizaba a la corte de distrito federal para castigar *sumariamente,* como desacato, la publicación, durante la pendencia de un pleito, de artículos y caricaturas que tendían a provocar la resistencia pública contra una orden de *injunction* y a influir en la decisión que habría de rendir la corte en el asunto ante ella pendiente. Disintiendo de la opinión de la mayoría, los Jueces Holmes y Brandeis, en una opinión escrita por el primero, se expresaron así:

"En diciembre se celebró la vista del caso, *sumariamente y sin un jurado,* ante el juez, quien creyó que su autoridad había sido desacatada, y al año siguiente impuso una multa considerable. La cuestión es si él actuó dentro de sus facultades bajo los estatutos de los Estados Unidos.

"El estatuto en vigor en la fecha de los alegados desacatos limitaba la facultad de las cortes en casos de esta naturaleza a aquellos en que había habido 'conducta impropia de alguna persona en su

presencia, o tan cerca de ella que obstruya la administración de justicia.' Sección 268, Código Judicial,...Antes de la celebración del juicio, se aprobó una ley concediendo un juicio por jurado a petición del acusado en todos los casos, menos en los arriba mencionados. Octubre 15, 1914, chap. 323, secciones 22, 24, 38 Stat. at L. 738, 739, Comp. Stat. 1916, secciones 1245 *b*, 1245 *d*. En Inglaterra, según creo, la práctica usual es proceder en la forma regular por medio de una acusación. Menciono este hecho y el estatuto posterior, solamente por su relación con el significado de la excepción en nuestra ley. Cuando se considera cuán contrario es a nuestra práctica y a nuestra manera de pensar el que la misma persona sea acusador y único juez en un asunto que, si esa persona es sensitiva, pueda envolver un fuerte resentimiento personal, yo esperaría que el poder quedase limitado por las necesidades del caso 'a asegurar el orden y el decoro en su presencia,' como se dijo en *Ex Parte Robinson,* 19 Wall 505, 22 L. Ed. 205. Y cuando se leen las palabras del estatuto, me parece que su significado es demasiado claro para que se les dé otra interpretación. En mi opinión, ellas se refieren y se refieren solamente a la protección inmediata de la corte contra una intervención actual, y no a una pospuesta retribución por falta de respeto a su dignidad...''

''Me parece que esta relación es suficiente para demostrar que no había emergencia alguna, que no había nada que justificase la conclusión de que la administración de justicia fué obstruída, *o que se recurriese a este procedimiento sumario,* sino que, por el contrario, cuando el asunto quedó terminado, el juez pensó que la 'consistente y poca amistosa actitud contra la corte,' y el hecho de que la publicación tendía 'a despertar desconfianza y desafecto contra la corte,' eran suficientes para justificar esta acusación y una fuerte multa. *Puede que lo fueran, pero no, según creo, en esta forma de juicio.* Yo iría tan lejos como cualquier otro hombre en favor del más severo y más sumario mantenimiento del orden en la corte y de la obediencia a sus decretos, pero cuando no hay necesidad de una acción inmediata los desacatos son como cualesquiera otras violaciones de la ley y deben ser juzgados en la misma forma en que la ley juzga otros actos ilegales.'' (Itálicas nuestras.)

Basta lo transcrito para comprender que la razón fundamental que tuvieron los dos distinguidos jueces Holmes y Brandeis, para disentir de la opinión de la mayoría, fué que los editores querellados fueron condenados *sumariamente,*

por el mismo juez a quien habían ofendido, y privándoles del derecho que el estatuto federal concede a los acusados de desacato—cuando éste no ha sido cometido en la presencia de la corte o lo suficientemente cerca para interrumpir sus procedimientos—a ser juzgados por un jurado.

El estatuto federal, sección 268, supra, comprende tres modalidades distintas de desacato: (a) la conducta impropia de cualquiera persona en presencia de la corte o tan cerca de ella que obstruya la administración de justicia; (b) la conducta impropia de un funcionario de la corte en asuntos oficiales; y (c) la desobediencia o resistencia por cualquiera persona a una orden legalmente dictada por la corte. Los casos comprendidos dentro de la primera modalidad pueden ser castigados sumariamente por la corte. En los comprendidos dentro de las otras dos modalidades, la persona acusada tiene derecho a ser juzgada por un jurado.

La sentencia de Nye y Mayers se basó en que los actos por ellos realizados constituían "conducta impropia tan cerca de la presencia de la corte que obstruyó la administración de justicia." La corte sentenciadora consideró el caso como comprendido dentro de la primera modalidad de la sección 268 del Código Judicial, procedió a oír la prueba sin la intervención de un jurado y condenó a los acusados sumariamente. La Corte Suprema revocó la sentencia, diciendo:

"Teniendo en cuenta esa historia, llegamos a la interpretación de la sección 268 del Código Judicial, a la luz de los hechos específicos de este caso. La cuestión es si las palabras 'tan cerca de ella' tienen una significación geográfica o causal. Leídas en su contexto y a la luz de su significado ordinario, concluimos que deben ser interpretadas como términos geográficos....No es suficiente que la conducta impropia imputada tiene alguna relación directa con el trabajo de la corte. 'Cerca' en este contexto, yuxtapuesto a 'presencia', sugiere proximidad física, no pertinencia..... Puede haber, por supuesto, muchos tipos de 'conducta impropia' que 'obstruyen la administración de justicia,' pero que no ocurren ni 'en' ni 'cerca' de la 'presencia' de la corte. Amplias categorías de tales actos, sin embargo, han sido reconocidas expresamente en la sección 2 de la ley de marzo 2, 1831 y posteriormente en la sección 135 del Código

Criminal, 18 U.S.C.A. sección 241. Se ha sostenido que un acto de conducta impropia, aun cuando esté cubierto por estas últimas disposiciones, puede también ser considerado como desacato si se comete en la 'presencia' de la corte. (Citas.) Sin embargo, en vista de la historia de esas disposiciones, debe darse una meticulosa consideración a esas distintas categorías de ofensas, a fin de que los casos en que no haya derecho a un juicio por jurado sean estrechamente restringidos. Si a 'tan cerca de ella' se le da un significado causal, entonces la sección 268 mediante el proceso de interpretación judicial habrá reconquistado gran parte de la generalidad que el Congreso en 1831 enfáticamente trató de quitarle. Si esa frase no se limita a actos en la vecindad de la corte y se permite que incluya actos que tienen 'una tendencia razonable' a 'obstruir la administración de justicia', entonces las condiciones que el Congreso trató de remediar en 1831 quedarán en gran parte restablecidas....

"Los actos imputados a los querellados ocurrieron a muchas millas de la corte de distrito. La influencia perniciosa que afectó a Elmore no se ejerció en ningún sentido posible en la 'presencia' de la corte o 'cerca de ella'..."

La Corte Suprema, por el voto de una mayoría de sus miembros y con el voto disidente del Juez Stone, en el que concurrieron el Juez Presidente Hughes y el Juez Roberts, revocó la sentencia en contra de Nye y Mayers y también su propia decisión en *Toledo Newspaper Co.* v. *U. S.*, supra.

El estatuto insular, apartado primero de la sección 1 de la Ley de Desacato, supra, define tres modalidades distintas de desacato: (a) el acto físico de perturbar el orden, hacer un ruido o promover un disturbio que tienda directamente a interrumpir el procedimiento; (b) la conducta desordenada, desdeñosa o insolente, hacia un tribunal, *en presencia del tribunal* y tendente a interrumpir sus procedimientos; y (c) conducta desordenada, desdeñosa o insolente hacia un tribunal, *durante una sesión del mismo,* y tendente a interrumpir sus procedimientos.

Debemos descartar de la presente discusión las modalidades (a) y (c), pues tanto en una como en la otra el acto constitutivo del desacato debe ser realizado mientras la corte está en sesión.

Los hechos que se imputan al querellado—la veracidad de los cuales debe considerarse como admitida para los fines de la excepción—son sin duda alguna constituvos de conducta desdeñosa e insolente, pues no concebimos que pueda demostrarse mayor desdén, falta de respeto e insolencia hacia un tribunal que al tratar de engañarle e interrumpir sus procedimientos haciéndole una relación de hechos falsos, a sabiendas de que son falsos.

¿Es necesario, para que los actos constitutivos de conducta desdeñosa e insolente hacia el tribunal puedan ser considerados como desacato, que esos actos se realicen ante el tribunal mientras éste se encuentra en sesión? La modalidad (b) del estatuto sólo exige que dichos actos se realicen "en presencia del tribunal."

En el caso de *El Pueblo* v. *Torres,* 56 D.P.R. 605, en el que el desacato consistió en un acometimiento y agresión contra la persona de un juez de distrito, en uno de los pasillos del edificio de la corte, después de terminada la sesión y cuando el juez salía de su despacho para dirigirse a su hogar, esta Corte Suprema confirmó la sentencia, diciendo:

"Si el desacato por virtud del cual se castigó al apelante fuese directo, no habría lugar a la más leve contención. Si fuere constructivo, c de dudosa naturaleza, entonces requiere detenido estudio.

"¿Fué directo, esto es, se cometió a la inmediata presencia de la corte?

"Para contestar debidamente la pregunta, tenemos que fijar primero bien qué se entiende por presencia de la corte.

"En la propia obra citada, American Jurisprudence, resumiendo la jurisprudencia sobre el particular, se dice:

" 'Al definir qué se entiende por "presencia de la corte", tal y como se emplea dicha expresión con referencia al delito de desacato, se dice que "la corte" consiste no sólo del juez, la sala del tribunal, el jurado o el salón del jurado si que de todos éstos combinados. La corte se halla presente dondequiera que alguno de sus elementos constitutivos se encuentre entregado a la labor del tribunal de acuerdo con la ley. Se sostiene en algunos estados que cualquier acto dirigido a impedir u obstruir a la corte en la debida administración de la justicia, debe considerarse como cometido en la presencia

del tribunal. En otros estados se sostiene que sólo aquellos desacatos que se cometen dentro de un radio de visión ocular deben considerarse como cometidos en la "presencia de la corte." En algunas ocasiones los tribunales han considerado los hechos del caso objeto de revisión, y han decidido si el desacato imputado fué cometido en la presencia de la corte sin establecer ningún principio definitivo a ese respecto.' 12 Am. Jur., sec. 5, pág. 392.

"Aquí el desacato no se cometió cuando la corte se hallaba en sesión. La corte estaba ventilando un proceso por asesinato. La sesión fué suspendida. El jurado quedó constituído en el salón destinado al efecto en los altos del edificio de la corte. Poco después de la suspensión, en momentos en que el juez salía de su despacho y caminaba por el pasillo contiguo a la sala del tribunal, fué asaltado por el acusado."

En el caso de *Cooke* v. *United States,* 267 U. S. 517, 69 L. Ed. 767, citado con aprobación en el de *Nye* v. *U. S.,* supra, el desacato consistió en que un litigante, siguiendo instrucciones de su abogado, penetró en el despacho del juez, durante un receso de la corte, y le entregó al juez una carta que contenía frases ofensivas. La Corte Suprema convino con la corte sentenciadora en que el acto realizado por el abogado era constitutivo de desacato, pero revocó la sentencia y devolvió el caso a la corte inferior para nuevos procedimientos, porque el juez sentenciador había tratado el caso "como si las palabras ofensivas hubiesen sido proferidas contra él en corte abierta."

En el caso de autos los hechos que se imputan al abogado querellado fueron realizados en el despacho de un juez de esta corte, mientras éste se encontraba en las funciones de su cargo, y el relato hecho por el querellado a dicho juez para que lo comunicase al tribunal, estaba íntimamente relacionado con un procedimiento pendiente ante el mismo y en el cual el querellado actuaba como representante legal de una de las partes.

La querella expone hechos que, a nuestro juicio, de ser probados, serían suficientes para constituir desacato.

*Se declara sin lugar la moción de sobreseimiento y archivo de la querella.*

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. TODD, JR.

He hecho constar que estoy conforme con el resultado de la anterior resolución, porque alegándose en el hecho tercero de la querella que al hacer el querellado al Hon. Juez Angel R. de Jesús las manifestaciones contenidas en el párrafo anterior, o sea el relato de lo que le había ocurrido, pidió a dicho Magistrado que transmitiera dichas manifestaciones a la Corte Suprema de Puerto Rico, y alegándose además en el hecho cuarto de la querella que dicho Magistrado transmitió a esta Corte Suprema dichas manifestaciones según los deseos del querellado, hechos que tenemos que aceptar como ciertos a los efectos de la moción de sobreseimiento y archivo, puede considerarse que dichas manifestaciones fueron hechas por el querellado en presencia de esta corte, ya que el Juez Sr. De Jesús no hizo otra cosa que cumplir con la petición que se alega le hizo el querellado, y por lo menos constructivamente puede considerarse que el querellado hizo dichas manifestaciones en presencia del tribunal.

Deseo hacer constar, además, que no estoy conforme con la interpretación restrictiva que se da en la opinión de la mayoría a lo resuelto en el caso de *Nye* v. *United States,* 85 L. ed. 733, y a la opinión disidente del Juez Holmes en el caso de *Toledo Newspaper Co.* v. *United States,* 247 U. S. 402, 62 L. Ed. 1186.