Milagros Vega Oliver, demandante y apelada, *v.* José Casanova Cintrón, demandado y apelante. *In Re:* José Casanova Cintrón, querellado (Incidente sobre desacato).

Núm. 9013.—*Sometido:* Mayo 10, 1945. *Resuelto:* Julio 6, 1945.

*Lionel Fernández Méndez* y *Juan A. Faría,* abogados del querellado apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Luis E. Dubón, abogado de la demandante en este pleito de divorcio, fué agredido por el demandado José Casanova Cintrón, en la Calle Tetuán, frente al edificio del Banco Popular, en el cual Dubón tiene su oficina. El fiscal de la Corte de Distrito de San Juan entonces radicó, dentro del pleito de divorcio, una querella contra Casanova solicitando fuera citado a mostrar causa porque no debía ser declarado culpable de desacato a la corte. Expedida la orden y celebrada la vista correspondiente la corte inferior declaró al demandado culpable y lo sentenció a cumplir quince días de cárcel

y a pagar una multa de $50. El demandado apeló y en este recurso sostiene que la corte inferior erró al desestimar la excepción perentoria en la que alegó que la querella no aduce hechos suficientes, al resolver que la conducta del querellado constituyó desacato y al resolver que la agresión fué realizada por el querellado con la intención de atemorizar, obstruir y perturbar los procedimientos de la corte y la debida administración de la justicia.

En la querella se alegó, en síntesis, que en la acción de divorcio, pendiente ante la corte inferior, el demandado había negado en su contestación que del matrimonio no existían bienes gananciales a repartir y por el contrario alegó que, entre otros, existen 60 acciones de la corporación R. Vega e Hijos, Inc., con un valor aproximado de $20,000; que en el curso del pleito de divorcio surgió la compra por Ramón Vega, Jr. de 30 de las acciones mencionadas y las cuales estaban registradas a nombre del querellado, por la suma de $11,000 de la cual el comprador retendría $279.86 para pagar una deuda del querellado; que Vega entregó dicho precio o sea un cheque por $10,720.14 a favor del querellado al abogado Luis E. Dubón y dicho abogado, tomando en consideración las disposiciones del artículo 101 del Código Civil fué de opinión y así aconsejó a su representada que debía obtener previamente la autorización de la corte para llevar a efecto el negocio y que el precio de la venta quedara consignado en poder del tribunal; que al efecto el Lic. Luis E. Dubón discutió la cuestión con el abogado del demandado Lic. Juan A. Faría y le sometió una estipulación para ser firmada por ambos abogados en la cual se relataban los hechos antes referidos y se consignaba el cheque en la corte; que el Lic. Faría no aceptó firmar la estipulación y la devolvió con el cheque a Dubón; que con posterioridad a haberse devuelto la estipulación y el cheque los abogados Dubón y Faría continuaron discutiendo sobre el asunto y que mientras dichas discusiones estaban llevándose a cabo y an-

tes de llegar a una decisión final, el querellado, el día 4 de abril de 1944, y en la calle Tetuán frente al edificio del Banco Popular dónde radican las oficinas del Lic. Dubón, ilegalmente y con la intención de causar daño violento al citado Luis E. Dubón, voluntaria y maliciosamente le acometió y agredió. Termina la querella alegando que " . . . dicho acometimiento y agresión se llevó a cabo por el querellado José Casanova Cintrón contra la persona del abogado Luis E. Dubón como consecuencia y en conexión con las gestiones profesionales y la forma de conducir dicho abogado los procedimientos y las actuaciones en el mencionado pleito Civil No. R-1164, de los de esta Corte, en representación de la parte demandante en dicho pleito, la referida Milagros Vega Oliver, y como abogado de ésta en dicho pleito.

"14. Que el acto realizado por el querellado tendió a mancillar y menoscabar el respeto, la dignidad y autoridad de esta Corte; tendió a interferir con el poder y el deber que tiene esta Honorable Corte de garantizar y proteger a sus funcionarios y oficiales de toda amenaza, coacción, violencia o agresión que contra ellos se intente realizar o se realice con motivo o como consecuencia del cumplimiento de sus deberes; y tendió por la fuerza y la violencia a obstruir la debida administración de justicia y a coartar el derecho que tienen todos los ciudadanos a comparecer ante las Cortes de Justicia y a mantener y defender sus derechos dentro de la ley, en forma lícita y correcta."

Arguye el apelante que aceptando que la agresión al abogado de la demandante por el demandado hubiera ocurrido en la forma que se alega en la querella, ese hecho, por haber ocurrido fuera de la presencia de la corte y a bastante distancia del edificio donde está ubicada, no constituye desacato.

El apartado primero de la sección 1ra. de la Ley de Desacato, según enmendada por la Ley núm. 102 de 1937 (Leyes de 1937, pág. 250) dispone que constituirá desacato:

"1. Perturbación del orden, ruido u otro disturbio, tendente directamente a interrumpir sus procedimientos, o conducta desordenada, desdeñosa o insolente, hacia un tribunal o juez o la Comisión Industrial de Puerto Rico constituída en pleno o por alguno de sus miembros, en presencia de dicho tribunal o durante una sesión del mismo, y tendente a interrumpir sus procedimientos, o en presencia de algún jurado mientras esté en estrados, o deliberando en alguna causa."

En el caso de *Pueblo* v. *Valdejulli*, 59 D.P.R. 119, 127, dijimos que este apartado define tres modalidades distintas del desacato, a saber:

". . . (*a*) el acto físico de perturbar el orden, hacer un ruido o promover un disturbio que tienda directamente a interrumpir el procedimiento; (*b*) la conducta desordenada, desdeñosa o insolente, hacia un tribunal, *en presencia del tribunal* y tendente a interrumpir sus procedimientos; y (*c*) conducta desordenada, desdeñosa o insolente hacia un tribunal, *durante una sesión del mismo*, y tendente a interrumpir sus procedimientos."

Y resolvimos que la modalidad (*b*) del estatuto no requiere que los actos constitutivos de conducta desordenada, desdeñosa o insolente hacia el tribunal sean realizados ante el mismo mientras se encuentre en sesión pues sólo exige que se realice "en presencia del tribunal," y que los hechos imputados al allí querellado al ser realizados "en el despacho de un juez de esta corte, mientras éste se encontraba en las funciones de su cargo, y el relato hecho por el querellado a dicho juez para que lo comunicase al tribunal, estaba íntimamente relacionado con un procedimiento pendiente ante el mismo y en el cual el querellado actuaba como representante legal de una de las partes" y, como consecuencia, que la querella aducía hechos suficientes para constituir desacato pues dicho relato constituía una conducta desdeñosa e insolente hacia el tribunal.

En cuanto a considerar una agresión como constitutiva de desacato hemos confrontado y resuelto la cuestión en dos casos. En el de *El Pueblo* v. *Torres*, 56 D.P.R. 605, en el

cual el desacato consistió en un acometimiento y agresión contra la persona de un juez de distrito, hecho ocurrido en los pasillos del edificio de la corte y después de terminada la sesión y cuando el juez salía de su despacho, y se resolvió que, no habiendo ocurrido los hechos mientras la corte se hallaba en sesión y no expresándose en la orden expedida contra el querellado el motivo del asalto ni si estaba o no relacionado con algún asunto de la corte en general o con el caso que se ventilaba en particular, se trataba de un desacato indirecto o constructivo.(1)   El otro caso fué el de *In re Castro,* 52 D.P.R. 139, en el cual la agresión a un abogado ocurrió fuera de la verja que separa la corte de las demás dependencias del Capitolio Insular y cuando ya había terminado la sesión de esta Corte, pero estando reunidos sus jueces en la sala de consultas, y resolvimos:

"En tal virtud resulta claro que la agresión se verificó no sólo contra un abogado que acababa de informar ante la corte en un asunto judicial a su defensa encomendado, si que con motivo de su informe y como castigo al mismo, dentro del edificio de la corte y hallándose ésta reunida en su sala de consultas.

"El desacato al tribunal es en su consecuencia manifiesto. La perturbación del orden tendente directamente a interrumpir el sereno desenvolvimiento del asunto judicial que se había dejado sometido a la decisión del tribunal y el ataque ilegal y violento a la persona de un funcionario de la corte, dentro o por lo menos en el umbral interior de su propio recinto y con motivo del ejercicio de su ministerio, evidentes son.   Y la corte, tanto por ley cuanto por su propia condición de corte, tiene el poder y el deber de castigarlos.   Artículo 145 del Código Penal.   Artículo 7 del Código de Enjuiciamiento Civil.   13 C. J. 46.

"     .     .     .     .     .     .     .     .

"Y en cuanto a que la sesión de la corte había ya terminado y a que la agresión tuvo lugar fuera de la reja que marca la exacta entrada de la corte, sin que ésta la presenciara, ni oyera las palabras que pronunció el querellado, bastará decir que apreciadas en conjunto

---

(1)Este caso fué resuelto por una corte dividida tres a dos, y a él nos referiremos más adelante.

todas las circunstancias concurrentes surge de ellas inevitable la conclusión de la comisión del desacato que sabido es que puede ser directo o constructivo. 13 C. J. 5."

Los hechos alegados en la querella en el caso de autos difieren sustancialmente de aquéllos que dieran lugar a las decisiones en los casos de *Castro* y *Torres,* supra. La agresión al abogado en el de *Castro* ocurrió en el mismo edificio de la corte, al terminar la sesión y mientras sus jueces estaban reunidos en consulta, y fué motivada por el informe oral que poco antes había rendido el abogado en relación con un caso que quedó sometido a la consideración y decisión del tribunal. Y en el de *Pueblo* v. *Torres,* la agresión al juez ocurrió en los pasillos de la corte, durante un receso y mientras el jurado estaba deliberando. En uno y otro caso, aunque de carácter indirecto o constructivo, se consideró la agresión como un desacato cometido en presencia del tribunal.

En el caso de autos, por el contrario, aun cuando se alega en la querella que estaba pendiente en la corte inferior una acción de divorcio, en la cual el Lic. Dubón representaba como abogado a la demandante y que el demandado, aquí querellado apelante, lo agredió en la calle frente al edificio donde el Lic. Dubón tiene sus oficinas, a bastante distancia del edificio de la corte de distrito, con motivo de haberse negado a entregarle un cheque expedido por Ramón Vega, Jr. a favor del demandado en pago de unas acciones que el demandado había vendido a Vega, no vemos como esta actuación del querellado pueda considerarse como "conducta desordenaba, desdeñosa o insolente" hacia la corte inferior realizada "en su presencia" y "tendente a interrumpir sus procedimientos," por los motivos siguientes:

1. Es cierto que la acción de divorcio estaba pendiente ante la corte inferior pero nada había ante ella en relación con la alegada venta de las acciones del demandado. La estipulación preparada por el Lic. Dubón, en ningún momento

aceptada ni firmada por el abogado del demandado, nunca pudo radicarse en la corte. En tanto en cuanto a la corte concernía nada sabía de dicha estipulación ni de la venta de las acciones y nada por tanto estaba pendiente de su resolución en relación con las mismas. Pero es más, las acciones, según se alega en la querella, pertenecían al querellado y fueron vendidas por él al Sr. Vega. Esto no obstante el cheque en pago de las acciones no fué entregado al demandado o a su abogado sino al abogado de la demandante. ¿Por qué se hizo esto por el Sr. Vega? Lo ignoramos. El Lic. Dubón, sin necesidad de obtener que se hiciera a virtud de una estipulación firmada por los abogados de las partes, pudo consignar el cheque mediante moción y dejar así sometida la cuestión a la corte. Optó, sin embargo, por seguir discutiéndola, extrajudicialmente, con el abogado del demandado que se negaba a firmarla(2) y días después fué agredido por el querellado, según se alega en la querella, ''como consecuencia y en conexión con las gestiones profesionales y la forma de conducir dicho abogado los procedimientos y las actuaciones'' en el pleito de divorcio, ''en representación de la parte demandante en dicho pleito.'' ¿En qué forma representaba a la demandante el Lic. Dubón al recibir del Sr. Vega un cheque librado a favor de Casanova? ¿Por qué el Sr. Vega no entregó ese cheque al demandado o a su abogado? ¿Por qué, repetimos, no se consignó el cheque en la corte? En las alegaciones contenidas en la querella no encontramos contestación a estas preguntas.(3) De manera que, en cuanto a todo el incidente relacionado con la compraventa de las acciones nada había pendiente ante la corte y no vemos cómo la actuación del querellado pudo tender

(2)Por la prueba sabemos que la negativa se debía al hecho de que el abogado del demandado insistía en que se hiciera constar en la estipulación que existían otras treinta acciones de R. Vega e Hijos, Inc. a nombre de la demandante adquiridas durante el matrimonio.

(3)Sí aparece de la declaración del Lic. Dubón durante el juicio que él era y había sido durante muchos años abogado de la firma R. Vega e Hijos, Inc.

"por la fuerza y la violencia a obstruir la debida administración de la justicia" según se alega en la querella.

2. Asumiendo, a los fines de la argumentación, que las gestiones que se llevaban a cabo en relación con la venta de las acciones del demandado a Vega y con la estipulación y la consignación del cheque y las conversaciones que el Lic. Dubón sostuvo con el Lic. Faría pudieran calificarse de gestiones profesionales del Lic. Dubón como abogado de la demandante en el pleito de divorcio, según se alega en la querella, nos confrontamos siempre con la cuestión principal envuelta en este caso, a saber, ¿fué la agresión del Lic. Dubón por el querellado cometida en presencia de la corte? ¿Tendió dicha conducta a interrumpir los procedimientos de la corte? Ambas preguntas deben contestarse en la negativa.

Los casos de *In re Castro*,(⁴) y *Pueblo* v. *Valdejulli*, supra, son distinguibles del de autos.

En cuanto al de *Pueblo* v. *Torres,* supra, como hemos dicho anteriormente, nota (1), el mismo fué resuelto por una corte dividida tres a dos. En la actualidad, de los jueces que intervinieron en dicho caso, sólo forman parte del Tribunal los dos Jueces Asociados que disintieron, Sres. Travieso y De Jesús. Estando el Juez Asociado Sr. Snyder

(⁴)Los casos de *U.S.* v. *Barrett*, 187 Fed. 378 y *Ex parte McLeod,* 120 Fed. 130, citados con aprobación en el de *In re Castro,* también presentaban hechos, especialmente el primero, que justificaban concluir que el desacato había sido cometido en presencia de la corte. En el primero, si bien se agredió al abogado del demandante en la calle, el hecho ocurrió frente al sitio donde estaba deliberando el jurado que intervino en el caso y a plena vista del mismo. Esa situación también está cubierta expresamente por nuestro estatuto al proveer que constituirá desacato ". . . conducta desordenada . . . en presencia de algún jurado mientras esté . . . deliberando en alguna causa." En el segundo, se agredió a un Comisionado de la corte mientras cumplía con los deberes de su cargo resolviéndose que "Como las cortes sólo pueden ejercer sus funciones judiciales a través de sus oficiales y funcionarios, cualquier ataque a un oficial o funcionario de ella por haber desempeñado alguno de sus deberes, es un ataque a la corte por lo que tal funcionario ha hecho o llevado a cabo en la administración de justicia." Empero, véase la crítica a este caso en Nelles & King, *Contempt by Publication in the United States,* 28 Col. L. Rev. 525, 539, citado en *Nye* v. *United States,* 313 U.S. 33, 51, nota (18).

y el que suscribe de acuerdo con la opinión disidente y todos los jueces conformes en que la agresión en dicho caso no fué cometida "en presencia" de la corte, el mismo debe considerarse expresamente revocado.

El alcance de la frase "en presencia de la corte" usada en los estatutos sobre desacato ha sido limitado rigurosamente por la decisión en el caso de *Nye* v. *United States*, 313 U. S. 33, la cual analizamos, en parte, en nuestra opinión en el de *Pueblo* v. *Valdejulli*, supra. Resolvió la corte Suprema Nacional que las palabras "tan cerca de ella" contenidas en la frase "en su presencia o tan cerca de ella que obstruya la administración de justicia" usada en la sección 288 del Código Judicial de los Estados Unidos (28 U.S.C.A. Sec. 385) tienen una significación geográfica y no causal, diciéndose: "No es suficiente que la conducta impropia imputada tenga alguna relación directa con el trabajo de la corte. 'Cerca' en este contexto, yuxtapuesto a 'presencia' sugiere proximidad física, no pertinencia . . . Puede haber, por supuesto, muchos tipos de 'conducta impropia' que 'obstruyen la administración de justicia,' pero que no ocurren 'en' ni 'cerca' de la 'presencia' de la corte." (⁵) En esta forma, no dió la Corte Suprema Nacional una nueva interpretación a la frase citada, sino que volvió a su interpretación original por las cortes federales y al mismo tiempo corrigió el error histórico cometido en su interpretación en el célebre caso de *Toledo Newspaper Co.* v. *United States*, 247 U. S. 402,(⁶) el cual revocó expresamente, eliminando así la regla en éste establecida de que dicha frase podía abarcar actuaciones que tienen "una tendencia razonable" a "obstruir la administración de justicia." Por el contrario la restringió a actuaciones ocurridas cerca (*vicinity*) de la corte.

---

(⁵) En *Pueblo* v. *Valdejulli*, supra, no se aplicó la doctrina del caso de *Nye*, por haberse llegado a la conclusión de que los hechos imputados ocurrieron en presencia de la corte y en relación con un caso sometido a su consideración.

(⁶) *Nye* v. *U.S.*, a la pág. 47, citándose a Frankfurter & Landis, *Power of Congress Over Procedure in Criminal Contempts in Inferior Federal Courts. A Study in Separation of Powers*, 37 Harv. L. Rev. 1010.

Pocos meses después de resuelto el caso de *Nye* v. *United States,* la Corte Suprema Nacional aclaró aún más el concepto del desacato constructivo (el envío de un telegrama comentando una decisión y la publicación de unos editoriales) y, rechazando la regla de la "tendencia razonable," aplicó la de que debía existir "un peligro claro y presente" (*clear and present danger*) y "que el mal substantivo debe ser extremadamente serio y el grado de inminencia extremadamente alto antes de que las manifestaciones puedan ser castigadas." *Bridges* v. *California,* 314 U. S. 252, 261.

Estos dos casos han merecido la aprobación general de los comentaristas legales[7] pues debido a la doctrina en ellos establecida se ha puesto coto a muchas arbitrariedades y abusos cometidos en el pasado al amparo del llamado poder inherente[8] de las cortes para castigar desacatos indirectos o constructivos. Y es que las leyes penales ofrecen campo extenso para cubrir cualquier actuación que, al no ocurrir en corte abierta o en presencia del tribunal, con la limitada acepción que "en presencia" ahora tiene, merezca y deba ser castigada en el curso ordinario de un proceso criminal.

Somos de opinión que la doctrina del caso de *Nye,* supra, es claramente aplicable a los hechos del caso de autos. La actuación del querellado Casanova no ocurrió en presencia de la corte inferior ni tendió a interrumpir sus procedimientos.[9] Erró la corte al desestimar la excepción perentoria

---

[7] Véase 54 Harvard Law Rev. 1397; 36 Ill. L. Rev. 471; 90 U. of Pa. L. Rev. 104; 30 Col. Law R. 577; 17 Tulane Law Rev. 121; *The Supreme Court in Freedom of the Press and Contempt by Publication,* por Elisha Hanson, en 27 Cornell Law Quarterly 165; *Freedom of the Press in Prospect and Retrospect,* por Leon R. Yankwich, en 15 So. Cal. L. Rev. 322 y la misma revista a la pág. 367.

[8] Para una discusión sobre este poder véase Frankfurter & Landis, op. cit., Nelles & King, *Contempt by Publication in the United States,* 28 Col. L. Rev. 525.

[9] Las alegaciones contenidas en el apartado 14 de la querella, supra, se apartan por completo de las modalidades específicas y concretas de nuestro estatuto sobre desacato y constituyen en gran parte meras conclusiones.

y en su consecuencia *debe revocar la sentencia apelada y dictarse otra absolviendo al querellado.*