EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO BAIGÉS CHAPEL, acusado y apelante.

*Número:* CR-74-75     *Resuelto:* 20 de mayo de 1975

*Pedro Baigés Chapel, pro se, Felipe Cirino Colón, Fermín Arraiza Miranda y Juan Mari Bras,* abogados del acusado; *Myriam Naveira de Rodón, Procuradora General, y Rolando Rodríguez Ossorio, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Precisa aclarar en este litigio varios aspectos del procedimiento de desacato.

En un caso distinto al presente, los abogados de la persona allí acusada presentaron una moción de inhibición contra el Juez Eugenio Ramos Ortiz del Tribunal Superior de Puerto Rico. Vista la moción ante otro magistrado, se declaró la misma sin lugar. No se recurrió ante nos, procediéndose en vez a radicar una moción de desistimiento del juicio *de novo* señalado para ventilarse ante el Hon. Eugenio Ramos Ortiz,

fundada en la alegación de que el acusado tenía la convicción moral de que no tendría un juicio justo e imparcial ante dicho magistrado.

Llegado el día del juicio compareció en representación del acusado el licenciado Pedro Baigés Chapel. Aunque el referido letrado no había suscrito personalmente la moción de desistimiento, aclaró que representaba al acusado para tales efectos y cualesquiera otros, y solicitó del tribunal que, dada su radicación, no se procediera a juicio. El Juez Ramos Ortiz interrogó entonces bajo juramento al licenciado Baigés Chapel y éste reiteró su solidaridad con las alegaciones de la moción de desistimiento. El Hon. Juez concluyó entonces que "esa moción es una ofensa gratuita por parte del Lic. Baigés Chapel a este Tribunal" y lo condenó sumariamente a pagar una multa de treinta dólares o a cumplir treinta días de cárcel. Ordenó entonces al magistrado que se transcribiese lo ocurrido, de modo que el recuento efectuado por el juez de lo aquí expuesto constituyese el fundamento de la orden de desacato. La sentencia emitida es un documento separado, donde no se hace referencia a los hechos constitutivos del desacato. Los actos constitutivos del desacato no se hacen constar tampoco de modo específico en la orden dictada en corte abierta. Tan sólo se manda a transcribir todo el incidente y se le incorpora a la orden.

En apelación ante nos el abogado perjudicado aduce dos errores: que la sentencia del Tribunal Superior es nula, por no haberse cumplido con los requisitos de la Regla 242 de Procedimiento Criminal, ni con la Sec. 3 de la Ley de Desacato, Ley de 1 de marzo de 1902, según enmendada, 33 L.P.R.A. sec. 519, ni con los requisitos del debido proceso de ley; y que es igualmente nula la sentencia por no constituir desacato la conducta del apelante. El Ministerio Público considera que debe revocarse la sentencia por haberse incumplido la Regla 242 y la norma sentada en *Coll Moya* v. *Alcaide*,

89 D.P.R. 225 (1963), solicitando que se le releve de discutir el segundo señalamiento de error.

## I

La Regla 242 de las de Procedimiento Criminal dispone:

"(a) *Procedimiento sumario.* El desacato criminal podrá castigarse en forma sumaria siempre que el juez certifique que vio u oyó la conducta constitutiva de desacato, y que se cometió en presencia del tribunal. La orden condenando por desacato expondrá los hechos y será firmada por el juez, dejándose constancia de ella en las minutas del tribunal.

(b) *Procedimiento ordinario.* Salvo lo provisto en el apartado (a) de esta regla, en todo caso de desacato criminal se le dará al acusado previo aviso la oportunidad de ser oído. El aviso expondrá el sitio, hora y fecha de la vista, concederá al acusado un tiempo razonable para preparar su defensa, hará saber al acusado que se le imputa un desacato criminal y expondrá los hechos esenciales constitutivos del mismo. El acusado tendrá derecho a su libertad provisional bajo fianza de acuerdo con las disposiciones de estas reglas. Si el desacato se fundara en actos o conducta irrespetuosa hacia un juez, éste no podrá conocer de la causa excepto con el consentimiento del acusado."

La Sec. 3 de la Ley de Desacato *supra*, provee:

"Siempre que alguna persona fuere multada o encarcelada por desacato a una corte o a la Comisión Industrial deberá firmarse por el juez o comisionado sentenciador una orden o mandamiento para dicha multa o prisión, consignándose en el mismo el acto o actos constitutivos de dicho desacato, así como la fecha y lugar de su comisión y circunstancias de la misma, con especificación de la sentencia del tribunal sin lo cual dicha sentencia quedará enteramente nula y sin efecto."

▮ No hemos tenido hasta ahora oportunidad de señalar la relación entre las dos disposiciones citadas, asunto que requiere especial atención, dado el hecho de que el Código Penal de 1974 no deroga la Ley de Desacato. A la luz de las múltiples salvaguardas con que la jurisprudencia y la doctrina crecientemente rodean los procedimientos sumarios, así como

del historial de los textos en cuestión, resolvemos que la orden a que se refiere la Regla 242 (a) es enteramente armonizable con la orden o mandamiento mencionado en la Sec. 3 de la Ley de Desacato, 33 L.P.R.A. sec. 519, por lo que toda orden de desacato sumario debe cumplir con los requisitos de ambas disposiciones legales. No hemos hallado indicio de que la intención al adoptarse la Regla 242 (a) fuese derogar *pro tanto* la Sec. 3 de la Ley de Desacato.

◼ En lo que concierne a este aspecto del caso presente la cuestión se reduce en consecuencia a determinar si es válida una orden de desacato sumario que se limita a incorporar por referencia la transcripción de todo lo ocurrido, sin especificar dentro de ese todo el acto o los actos constitutivos del desacato y sin cumplir con los otros requisitos que imponen la Sec. 3 de la Ley y la Regla 242 (a).

En *Coll Moya* v. *Alcaide*, 89 D.P.R. 225 (1963), se resolvió que no se requieren dos documentos separados de sentencia y mandamiento, pudiendo fundirse ambos en uno, pero tan sólo si se consignan en el mismo los actos específicos del desacato. Esta norma debe observarse rigurosamente. *Pueblo* v. *Tribunal Superior*, 92 D.P.R. 471 (1965).

La jurisprudencia interpretativa de la Regla 42 (a) federal, equivalente a la Regla 242 (a) nuestra y ambas menos detalladas que la Sec. 3 de nuestra Ley de Desacato, establece igual norma. En *United States* v. *Marshall*, 451 F.2d 372 (9th Cir. 1971), se incorporó la transcripción de evidencia mediante una referencia en la orden, sin citar las partes específicas de la transcripción contentivas del desacato. Se resolvió que dicho procedimiento violaba las disposiciones de la Regla 42 (a). Véase también: *Harris* v. *United States*, 382 U.S. 162 (1965); *Holt* v. *Virginia*, 381 U.S. 131 (1965); 3 Wright, *Federal Practice and Procedure (Criminal)*, sec. 708, págs. 170–171. El caso de autos representa una situación más extrema, pues el único documento firmado por el

juez fue la sentencia y en ella no se incorporó por referencia la transcripción de los procedimientos.

En vista de los fundamentos expuestos, consideramos innecesario discutir los señalamientos adicionales en que se apoya el apelante.

El Juez Presidente, Señor Trías Monge, emitió una opinión concurrente con la cual concurre el Juez Asociado, Señor Irizarry Yunqué; el Juez Asociado, Señor Negrón García, emitió otra opinión concurrente con la cual concurre el Juez Asociado, Señor Díaz Cruz; y el Juez Asociado, Señor Irizarry Yunqué, emitió un voto particular con el cual concurre el Juez Presidente, Señor Trías Monge.

—O—

Opinión concurrente del Juez Presidente Señor Trías Monge con la cual concurre el Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 20 de mayo de 1975

Estimamos que por su entrelazamiento con la cuestión discutida en la opinión del Tribunal, así como por su considerable interés público, que apunta a la necesidad de fijar normas en esta zona del derecho, debemos expresarnos también sobre la contención del apelante de que la sentencia emitida incumple con los requisitos de la Regla 242 (a) de Procedimiento Criminal, relativa al desacato sumario. La Oficina del Procurador General admite en su alegato que se violaron dichos requisitos.

Sólidas consideraciones jurídicas y de orden público la respaldan. La trayectoria del derecho en este sector ha sido por largos años hacia el constreñimiento del desacato sumario en todo lo posible. Para evitar graves problemas de debido proceso de ley, se le ha limitado a situaciones fuera de lo común, verdaderamente excepcionales, donde se amenace seria e inminentemente la institución en sí de la justicia y se requiera

acción instantánea para asegurar la marcha ordenada y digna de los procedimientos. *In Re Little*, 404 U.S. 553 (1972); *Bridges* v. *California*, 314 U.S. 252 (1941); *Harris* v. *United States*, 382 U.S. 162 (1965); 3 Wright y Miller, *Federal Practice and Procedure*, sec. 707, pág. 165. No debe estimarse que el desacato sumario proviene del derecho natural, del orden preestablecido e inmutable de las cosas. El desacato sumario es una antigua institución indígena del Derecho Común, 4 Blackstone, *Commentaries* 286 (14ª ed. 1803). Se le desconoce generalmente en el Derecho Civil. Davis, H. H., *Summary Punishment for Contempt*, 39 So. Cal. L. Rev. 463, 467 (1966); Pekelis, A. H., *Legal Techniques and Political Ideologies*, 41 Mich. L. Rev. 655, 667–668 (1943). En el propio Estados Unidos se ha abogado por la eliminación total del procedimiento sumario por estimarse que puede equivaler a una violación del debido proceso de ley. Davis, *supra, passim.*

No procedía utilizar en este caso el procedimiento sumario. Se recordará que la Regla 242(a) requiere para ello que el desacato se cometa en presencia del tribunal. 8A Moore, *Federal Practice*, sec. 42-01 [3], pág. 42-11; Odom, W. A. y Baker, L. A., *Direct and Constructive Contempt*, 26 Baylor L. Rev. 147 (1974). Si un abogado le envía a un magistrado una carta ofensiva a su dignidad, solicitando su inhibición en un litigio, no puede castigársele sumariamente. *Cooke* v. *United States*, 267 U.S. 517 (1925). ¿Se altera el resultado si el juez le ordena al abogado a repetir en corte abierta el contenido de su carta o moción? La contestación es que no. *Harris* v. *United States*, 382 U.S. 162 (1965). *Holt* v. *Virginia*, 381 U.S. 131 (1965). No es imprescindible en estas situaciones el castigo inmediato para vindicar el interés de la justicia. No existe un peligro claro y presente de obstrucción de los procedimientos judiciales. *Nye* v. *United States*, 313 U.S. 33 (1940); *Bridges* v. *California*, 314 U.S. 252 (1941); *In re Casanova*, 65 D.P.R. 226 (1945). De resolverse que la repetición obligada en corte abierta de un escrito puede servir de base para un procedi-

miento sumario, se estaría subvirtiendo el propósito de la Regla 242 (a). Notes, *Summary Disposition Provided for in Rule 42 may not be Employed to Punish for Contempt of Grand Jury,* 12 Wayne L. Rev. 699, 700 (1966).

—O—

Opinión concurrente del Juez Asociado, Señor Negrón García, con la cual concurre el Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 20 de mayo de 1975

Concurro con la opinión del Tribunal que revoca la convicción y sentencia por desacato sumario impuéstale al acusado-apelante Pedro Baigés Chapel, abogado que representaba a un ciudadano en una causa criminal. Dicho dictamen expone correctamente la relación de hechos y normas de derecho aplicables que resultan necesarias para su disposición.

Sin embargo, las expresiones adicionales vertidas por dos distinguidos jueces en opinión concurrente, me impelen—en un momento en que la judicatura puertorriqueña está siendo objeto de ataques y señalamientos, algunos viciosos y destructivos y otros constructivos y apropiados—a cuestionar si resulta propio el que, sin cualificación de clase alguna, se le dé aplicabilidad en Puerto Rico a normas basadas en pensamientos o jurisprudencia de distinguidas autoridades, del antaño y del presente, que no tienen ningún tipo de vinculación directa ni conocimiento sobre el proceso judicial del país y los fenómenos que lo nutren.

El que en "los propios Estados Unidos se abogue por la eliminación total del procedimiento sumario", o se manifieste determinada tendencia o corriente en otros aspectos del derecho u órdenes de la vida, no puede ser criterio exclusivo para que nuestras decisiones sigan dicho curso ciegamente. Distinto a la tendencia que se expone sobre el particular, fue motivo de preocupación por la Asamblea Legislativa de Puerto Rico, plasmado en las recientes leyes de reforma judicial, fortalecer

la autoridad de los tribunales y continuidad de los procedimientos criminales. A tal efecto, y como ejemplos, la Ley Núm. 138 de 23 de julio de 1974 amplía la etapa en que se pueden continuar los procedimientos judiciales en ausencia de un acusado y autoriza a los tribunales, cuando un acusado intenta afectar el desarrollo normal de un juicio, a tomar medidas coercitivas, tramitar un desacato u ordenar su remoción; la Ley Núm. 145 de igual fecha, diseña un procedimiento para que un juez pueda ser sustituido y continúe el proceso; y en particular el Art. 235 del nuevo Código Penal, que además de aumentar la penalidad por desacato, confiere a todo magistrado dicho poder y lo hace extensivo a investigaciones judiciales.

Ninguna decisión puede hacerse con abstracción de las realidades del Puerto Rico contemporáneo. Nuestros jueces de instancia son soldados de primera línea, que sujetos al fragor de la contienda judicial tratan de impartir justicia en toda clase de causas en que, lógica y naturalmente están presentes y a prueba las ideas, posiciones y tésis, no sólo de naturaleza jurídica, sino sociológicas, ideológicas, económicas, y otras. Es por ello que la condición de juez exige atributos óptimos de honradez, inteligencia, paciencia, laboriosidad, independencia de pensamiento, amplitud de criterio y sobre todo tolerancia.

Como custodios de la fe y la autoridad judicial les corresponde mantener el orden y la dignidad de los tribunales, conservando siempre un sereno equilibrio, velando por que sus actuaciones sean con mesura y firmeza; particularmente ante ataques directos. De él se espera un dominio adicional sobre las reacciones normales humanas.

No obstante, ello no significa que cuando se trasciende lo normal en el recinto del tribunal, el trámite sumario de desacato está inhibido porque el ataque se exprese únicamente por el medio escrito. El derecho que reconozco a un abogado de desplegar vehementemente todas las defensas posibles en

la causa de su representado no significa inmunidad para el insulto.

Es absurdo pensar que solamente la obstrucción manifestada física o verbalmente puede dar margen al trámite sumario de desacato. Un escrito insolente presentado a un magistrado que preside una sesión, irrespectivamente de que sea reproducido verbalmente por su autor durante el proceso por acción voluntaria u obligada, es capaz de afectar y obstruir el desenvolvimiento normal de las labores judiciales. En tal caso, presentes los demás requisitos, la utilización del trámite sumario no sólo sería el apropiado, sino aconsejable como único medio garantizador de la continuidad del proceso y para vindicar efectivamente la dignidad del tribunal, manchada gratuitamente por el contenido del escrito.

Convengo que en este caso la repetición obligada por el apelante Lcdo. Baigés Chapel del contenido de la moción de desistimiento ante el tribunal, no era base suficiente para seguirse el trámite de desacato sumario: *Pueblo* v. *Gelpí*, 59 D.P.R. 36 (1941). Sin embargo, por las razones previamente expuestas, no puedo coincidir con la conclusión de la Opinión concurrente al efecto de que ". . .[de] resolverse que la repetición obligada en corte abierta de un escrito puede servir de base para un procedimiento sumario, se estaría subvirtiendo el propósito de la Regla 242(a)."

Estimo que tal juicio categórico resulta erróneo y responde más bien a un enfoque conceptual con abstracción de la realidad situacional, tácticas y variantes que acontecen y pueden surgir ante nuestros tribunales.

—O—

Voto particular del Juez Asociado Señor Irizarry Yunqué con el cual concurre el Juez Presidente Señor Trías Monge.

San Juan, Puerto Rico, a 20 de mayo de 1975

Lamento tener que terciar en lo que, por virtud del voto

particular del hermano Juez Negrón García, se convierte en una polémica académica sobre el uso por los jueces de su poder para castigar sumariamente a un ciudadano por desacato. Dicho voto particular va dirigido a cuestionar la validez para nuestro medio y en nuestro tiempo de las expresiones vertidas por el Juez Presidente en su voto concurrente. Es decir, es un voto disintiendo de una opinión concurrente. Seis jueces de este Tribunal le niegan su apoyo a la ponencia concurrente. Ahí debía ponerse punto final al asunto, pero no ocurre así. Y en ese vigoroso disenso a la ponencia concurrente—continuamos en un ejercicio académico—se habla de los ataques a la judicatura puertorriqueña y se hace una apología de los jueces de instancia como soldados de primera línea, como si el poder de castigar sumariamente por desacato fuera el arma de defensa de los jueces y la ponencia concurrente pretendiera despojarlos de ella.

He dado mi voto de aprobación a la opinión concurrente porque entiendo que no quita ni un ápice a los poderes de los jueces para hacer respetar la dignidad de su ministerio. La dignidad no se hace respetar con el látigo del desacato; se hace respetar con el ejemplo de ecuanimidad que debe haber en cada juez, en que está ínsito el respeto que ellos a su vez le deben a los abogados y a la ciudadanía en general.

La opinión concurrente es una nota de precaución, no para imponer el desuso del desacato sumario, sino para prevenir su abuso. El castigo sumario por desacato raya en la privación del debido proceso de ley, y deforma la imagen de la justicia. Es una excepción al principio de que no se puede ser juez y parte. De ahí que en la opinión concurrente se advierta sobre su trayectoria decadente.

Para terminar este breve comentario, copio a continuación las siguientes palabras, tan de actualidad hoy como cuando se dijeron hace un cuarto de siglo, dichas por el Juez Presidente Señor Del Toro en *De Torres* v. *Corte*, 58 D.P.R. 515, 527–528 (1941):

"La mejor práctica a seguir es ignorar las ofensas personales que puedan inferirse a los jueces, confiando éstos en que su actuación serena, firme y sin prejuicios, y la resolución última del caso basada estrictamente en los méritos del mismo, constituirán una vindicación más efectiva que la condena directa del ofensor.

Es cuando el desacato tiende a obstruir y en efecto obstruye la debida administración de la ley, cuando se altera el orden o se desobedece el mandato del tribunal, que los jueces deben actuar sin demora. Entonces su actuación se impone como algo necesario y ejerce una influencia saludable en el seno de la sociedad que se da cuenta exacta de que las cortes, baluarte de los derechos del ciudadano, no sólo dan a cada uno lo que es suyo, si que tienen poder para realizar su misión venciendo los obstáculos que puedan presentársele castigando perentoriamente a aquéllos que los crean.

Por el contrario, cuando al desacato se recurre con demasiada frecuencia por injurias personales a los jueces, aunque técnicamente se tenga razón al castigar al delincuente, en vez de fortalecerse el prestigio de las cortes en la conciencia social, se debilita, y la extraordinaria facultad de convertirse en juez y parte que el ejercicio del poder implica, produce más bien la impresión del uso de un privilegio que la del cumplimiento de un deber."